# 24-1281

United States Court of Appeals
for the Second Circuit

MICHAEL CAMPBELL, ERNEST FABRIZIO, and JOSHUA KNIGHT,
on behalf of themselves and all others similarly situated,
*Plaintiffs-Appellants*,

– v. –

THE IBM PERSONAL PENSION PLAN, THE PLAN ADMINISTRATOR COMMITTEE, and
INTERNATIONAL BUSINESS MACHINES CORP.,
*Defendants-Appellees.*

On Appeal from the United States District Court for the
Southern District of New York
No. 7:22-cv-04592 – Judge Nelson S. Román

## RESPONSE BRIEF FOR DEFENDANTS-APPELLEES

Robert S. Newman
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5125

Traci L. Lovitt
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939

David T. Raimer
Caleb P. Redmond
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: (202) 879-3939

*Counsel for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Appellees International Business Machines Corporation ("IBM"), the Plan Administrator Committee, and the IBM Personal Pension Plan state as follows:

IBM is a publicly traded corporation, has no parent corporation, and no other publicly held corporation owns 10% or more of IBM's stock.

The Plan Administrator Committee and the IBM Personal Pension Plan are not corporations.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

STATEMENT OF THE ISSUES...............................................................3

STATEMENT OF THE CASE..................................................................3

SUMMARY OF ARGUMENT ...............................................................13

STANDARD OF REVIEW .....................................................................15

ARGUMENT ..........................................................................................16

I.      PLAINTIFFS' STATUTORY CLAIMS ARE UNTIMELY......................16

      A.     The Plan's Limitations Period Bars Plaintiffs' Statutory Claims ......16

      B.     Plaintiffs' Contrary Arguments Cannot Withstand Scrutiny.............21

II.     PLAINTIFFS' FIDUCIARY CLAIM IS UNTIMELY ...............................34

      A.     Plaintiffs Had Actual Knowledge of the Material Facts Underlying Their Claim Three Years Prior to Bringing Suit.............34

      B.     Plaintiffs' Contrary Arguments Are Misplaced.................................38

III.    IN ANY EVENT, PLAINTIFFS FAIL TO ALLEGE A FIDUCIARY BREACH ...............................................................................................41

      A.     The Committee Had No Duty To Update the Plan's Method for Calculating Benefits ..........................................................................41

      B.     The Committee Had No Duty To Deviate from the Terms of the Plan in Calculating Benefits.................................................................44

      C.     The Committee Did Not Misrepresent the Benefits Available to Plaintiffs .........................................................................................50

CONCLUSION.......................................................................................51

# TABLE OF AUTHORITIES

**Page**

CASES

*Alessi v. Raybestos–Manhattan, Inc.*,
  451 U.S. 504 (1981)............................................................7

*Barnes v. Lacy*,
  927 F.2d 539 (11th Cir. 1991) ..........................................20

*Belade v. ITT Corp.*,
  909 F.2d 736 (2d Cir. 1990) .............................................42

*Bell v. Pfizer, Inc.*,
  626 F.3d 66 (2d Cir. 2010) ...............................................49

*Bilello v. JPMorgan Chase Ret. Plan*,
  607 F. Supp. 2d 586 (S.D.N.Y. 2009) .........................20, 30

*Caputo v. Pfizer, Inc.*,
  267 F.3d 181 (2d Cir. 2001) .......................................34, 36

*Castello v. Gamache*,
  593 F.2d 358 (8th Cir. 1979) ............................................20

*Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*,
  387 F. Supp. 2d 175 (E.D.N.Y. 2005) ...............................47

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) .............................................33

*Chasteen v. UNISIA JECS Corp.*,
  216 F.3d 1212 (10th Cir. 2000) ........................................23

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011)........................................................4, 5

-iii-

*City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*,
  92 F.4th 381 (2d Cir. 2024) ................................................................15

*Clark v. NBD Bank*,
  3 F. App'x 500 (6th Cir. 2001) ..........................................................20

*Clarke v. Pilkington N. Am., Inc.*,
  No. 21-12119, 2022 WL 4483817 (E.D. Mich. Sept. 27, 2022) ........36

*Conkright v. Frommert*,
  559 U.S. 506 (2010).........................................................................4, 49

*Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*,
  988 F.3d 127 (2d Cir. 2021) ................................................................7

*Corcoran v. New York Power Auth.*,
  202 F.3d 530 (2d Cir. 1999) ........................................................17, 25

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
  770 F. Supp. 2d 497 (E.D.N.Y. 2011) ...............................................33

*Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A.*,
  650 F. Supp. 3d 62 (S.D.N.Y. 2023) ..................................................33

*Farmer v. Brennan*,
  511 U.S. 825 (1994).......................................................................2, 35

*Faulkner v. Beer*,
  463 F.3d 130 (2d Cir. 2006) ..............................................................33

*Freier v. Westinghouse Elec. Corp.*,
  303 F.3d 176 (2d Cir. 2002) ..............................................................16

*Friedman v. Meyers*,
  482 F.2d 435 (2d Cir. 1973) ..............................................................28

*Geller v. Cnty. Line Auto Sales, Inc.*,
  86 F.3d 18 (2d Cir. 1996) ..................................................................44

*Glob. Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006) ...............................................................30

*Gluck v. Unisys Corp.*,
  960 F.2d 1168 (3d Cir. 1992) .............................................34, 35, 38

*Guilbert v. Gardner*,
  480 F.3d 140 (2d Cir. 2007) ...............................................................24

*Guo v. IBM 401(k) Plus Plan*,
  95 F. Supp. 3d 512 (S.D.N.Y. 2015) .............................................33, 36

*Hamrick v. E.I. du Pont de Nemours & Co.*,
  No. CV 23-238-JLH, 2024 WL 359240 (D. Del. Jan. 31, 2024) ......................47

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
  571 U.S. 99 (2013).........................................................................7

*Hertz v. United States*,
  560 F.3d 616 (6th Cir. 2009) ...............................................................25

*Hirt v. Equitable Ret. Plan for Emps., Managers & Agents*,
  285 F. App'x 802 (2d Cir. 2008) .........................................................20

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999).........................................................................43

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991) ...............................................................32

*IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*,
  No. 14-CV-3443 JSR, 2015 WL 1516631 (S.D.N.Y. Mar. 26, 2015).............23

*In re Citigroup Erisa Litig.*,
  104 F. Supp. 3d 599 (S.D.N.Y. 2015) ...............................................35

*In re DeRogatis*,
  904 F.3d 174 (2d Cir. 2018) .......................................................50, 51

*Intel Corp. Investment Policy Committee v. Sulyma*,
589 U.S. 178 (2020)................................................................................passim

*Janese v. Fay*,
692 F.3d 221 (2d Cir. 2012) ........................................................4, 42

*Jordan v. Fed. Exp. Corp.*,
116 F.3d 1005 (3d Cir. 1997) ...............................................21

*Jusino v. Fed'n of Cath. Tchrs., Inc.*,
54 F.4th 95 (2d Cir. 2022) ...............................................15

*Kendall v. Emps. Ret. Plan of Avon Products*,
561 F.3d 112 (2d Cir. 2009) ...............................................48

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
555 U.S. 285 (2009)...............................................49

*Knight v. Int'l Bus. Machs. Corp.*,
No. 22-CV-4592, 2024 WL 1466817 (S.D.N.Y. Apr. 4, 2024) ...........................4

*Koch v. Christie's Int'l PLC*,
699 F.3d 141 (2d Cir. 2012) ...............................................27

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) ...............................................32

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998) ...............................................22, 25

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011) ...............................................34

*Lalonde v. Mass. Mut. Ins. Co.*,
No. CV 22-30147-MGM, 2024 WL 1346027 (D. Mass. Mar. 29, 2024) ..........36

*Laurent v. PricewaterhouseCoopers LLP*,
No. 06-CV-2280, 2018 WL 502239 (S.D.N.Y. Jan. 19, 2018)....................47, 48

*LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*,
  318 F.3d 148 (2d Cir. 2003) ...............................................................27

*Levy v. U.S. Gen. Acct. Off.*,
  175 F.3d 254 (2d Cir. 1999) (per curiam) .........................................37

*Livick v. Gillette Co.*,
  524 F.3d 24 (1st Cir. 2008)..................................................................44

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996)...............................................................4, 5, 43, 47

*Manginaro v. Welfare Fund of Loc. 771, I.A.T.S.E.*,
  21 F. Supp. 2d 284 (S.D.N.Y. 1998) ..................................................21

*Massaro v. Palladino*,
  19 F.4th 197 (2d Cir. 2021) ..........................................................41, 42

*Massimino v. Fid. Workplace Servs., LLC*,
  No. 1:15-CV-01046, 2016 WL 6893609 (W.D.N.Y. Nov. 23, 2016)...............33

*Masten v. Metro. Life Ins. Co.*,
  543 F. Supp. 3d 25 (S.D.N.Y. 2021) ...........................................passim

*McDaniel v. Chevron Corp.*,
  203 F.3d 1099 (9th Cir. 2000) ............................................................43

*Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*,
  856 F.2d 1418 (9th Cir. 1988) ............................................................37

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010).............................................................................17

*Muehlgay v. Citigroup Inc.*,
  649 F. App'x 110 (2d Cir. 2016) ..................................................35, 40

*Moses v. Revlon Inc.*,
  691 F. App'x 16 (2d Cir. 2017) ..........................................................27

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
  798 F.3d 125 (2d Cir. 2015) ................................................................47

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ...............................................................31

*Novella v. Westchester County*,
  661 F.3d 128 (2d Cir. 2011) .........................................................passim

*Oechsner v. Connell Ltd. P'ship*,
  283 F. Supp. 2d 926 (S.D.N.Y. 2003) ................................................35

*Osberg v. Foot Locker, Inc.*,
  862 F.3d 198 (2d Cir. 2017) .......................................................25, 26

*Paul v. RBC Cap. Mkts. LLC*,
  No. C16-5616, 2018 WL 3630290 (W.D. Wash. July 31, 2018)................47, 48

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)...................................................................passim

*Pohl v. Nat'l Benefits Consultants, Inc.*,
  956 F.2d 126 (7th Cir. 1992) ..............................................................44

*Robertson v. Seidman & Seidman*,
  609 F.2d 583 (2d Cir. 1979) ...............................................................28

*Roe v. Empire Blue Cross Blue Shield*,
  No. 12-CV-04788, 2014 WL 1760343 (S.D.N.Y. May 1, 2014)...........44, 47, 48

*Rotella v. Wood*,
  528 U.S. 549 (2000)................................................................24, 26

*Rush Prudential HMO, Inc. v. Moran*,
  536 U.S. 355 (2002)..........................................................................4

*Sec'y of Lab. v. Macy's, Inc.*,
  No. 1:17-CV-541, 2022 WL 407238 (S.D. Ohio Feb. 10, 2022)................47, 48

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004) .........................................................15, 32

*Skrtich v. Pinnacle W. Capital Corp.*,
   No. CV-22-01753-PHX-SMB, 2023 U.S. Dist. LEXIS 136862
   (D. Ariz. Aug. 7, 2023) ...................................................................47

*Smith v. Aetna*,
   No. 1:22-CV-00426, 2024 WL 760162 (D. Colo. Jan. 26, 2024) ......36

*Stone v. Williams*,
   970 F.2d 1043 (2d Cir. 1992) ..........................................................22

*Sutter v. BASF Corp.*,
   964 F.2d 556 (6th Cir. 1992) ...........................................................42

*Testa v. Becker*,
   910 F.3d 677 (2d Cir. 2018) .................................................19, 20, 27

*Thompson v. Ret. Plan for Emps. of S.C. Johnson & Sons, Inc.*,
   716 F. Supp. 2d 752 (E.D. Wis. 2010) .............................................27

*United States v. The Baylor Univ. Med. Ctr.*,
   469 F.3d 263 (2d Cir. 2006) .............................................................27

*United States v. Inc. Village of Island Park*,
   791 F. Supp. 354 (E.D.N.Y. 1992) ...................................................23

*United States v. Kubrick*,
   444 U.S. 111 (1979)..........................................................................25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ...............................................................30

*Wilder v. News Corp.*,
   No. 11 CIV. 4947, 2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015)........37

*Winfield v. Citibank, N.A.*,
   842 F. Supp. 2d 560 (S.D.N.Y. 2012) ..............................................33

-ix-

*Winnett v. Caterpillar, Inc.*,
   609 F.3d 404 (6th Cir. 2010) ..............................................................20

*Yeadon v. New York City Transit Auth.*,
   719 F. Supp. 204 (S.D.N.Y. 1989) ....................................................28

**STATUTES**

26 U.S.C. § 401 ............................................................................6, 43, 48

26 U.S.C. § 411 ........................................................................................6

29 U.S.C. § 1002 ................................................................................4, 42

29 U.S.C. § 1022 ....................................................................................20

29 U.S.C. § 1053 ................................................................................6, 46

29 U.S.C. § 1054 ......................................................................................6

29 U.S.C. § 1055 ........................................................................6, 11, 46

29 U.S.C. § 1102 ....................................................................................43

29 U.S.C. § 1104 ......................................................................5, 8, 47, 48

29 U.S.C. § 1110 ....................................................................................48

29 U.S.C. § 1113 ......................................................................8, 12, 34, 40

**OTHER AUTHORITIES**

26 C.F.R. § 1.411(d)-3 ..............................................................................6

26 C.F.R. § 1.417(a)(3)-1 ..................................................................28, 31

29 C.F.R. § 2509.75-8 ........................................................................44, 45

Fed. R. Civ. P. 10 ....................................................................................32

Fed. R. Civ. P. 12 ............................................................................27, 35

Rev. Rul. 79-90, 1979-1 C.B. 155 .............................................................43

Rev. Rul. 81-12, 1981-1 C.B. 228 .............................................................6

**INTRODUCTION**

This case is one of many suits challenging the manner in which defined benefit pension plans calculate what is known as a "joint and survivor annuity." Such plans typically provide "single life annuities," which guarantee individual retirees a fixed monthly benefit for life. In the alternative, they also offer joint and survivor annuities, which promise monthly payments both for the life of a retiree and the life of any surviving spouse.

Because joint and survivor annuities cover two lifetimes rather than one, pension plans need a method for valuing a participant's single life annuity and then converting it into a comparable joint and survivor annuity. To do this, plans rely on two actuarial assumptions: an interest rate (to calculate the time value of money) and a mortality table (to estimate life expectancy). Once applied, these assumptions result in a joint and survivor annuity that is "actuarially equivalent" to a single life annuity.

Plaintiffs challenge the actuarial assumptions used by the IBM Personal Pension Plan (the "Plan") for this purpose, asserting that the Plan's mortality tables are outdated. In Plaintiffs' view, the Employee Retirement Income Security Act ("ERISA") requires Defendants to continuously evaluate and update the Plan's actuarial assumptions.

1

Plaintiffs' theory has many flaws, but first and foremost, their claims are time-barred. Plaintiffs knew of the actuarial assumptions they now challenge years ago, rendering their claims untimely. Indeed, Plaintiffs affirmatively allege that they received, read, and relied on disclosures that revealed the Plan's methodology for calculating their joint and survivor annuities. These admissions demonstrate that Plaintiffs had the knowledge required (whether constructive or actual) to trigger the relevant limitations periods for all of their claims.

Perhaps recognizing this reality, Plaintiffs (and their Amicus) focus heavily on the sole claim—Plaintiffs' fiduciary claim—subject to an "actual knowledge" standard. But the district court correctly inferred actual knowledge from the allegations in the Amended Complaint and the documents it incorporates. This analytical approach is entirely consistent with the Supreme Court's decision in *Intel Corp. Investment Policy Committee v. Sulyma*, 589 U.S. 178 (2020), which acknowledged that district courts could draw such "'inference[s] from circumstantial evidence'" "at any stage of the litigation." *Id.* at 189 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

In all events, although the district court did not reach the issue, there is an independent basis to affirm its dismissal of Plaintiffs' fiduciary claim: Plaintiffs do not (and cannot) plead that the Plan Administrator Committee (the "Committee") failed to comply with its fiduciary duties. Those duties are simply not implicated by

the purported failure to update the Plan's actuarial assumptions. Nor do they provide any basis to fault the Committee for calculating benefits as required by the Plan, or for accurately informing participants of the amounts they would receive under its provisions. Any other rule would add complexity, cost, and uncertainty into the management of pension plans, potentially causing employers to forgo them altogether.

Accordingly, this Court should affirm the district court's decision.

## STATEMENT OF THE ISSUES

1.     Whether the district court correctly held that Plaintiffs' three statutory claims are untimely.

2.     Whether the district court correctly held that Plaintiffs' fiduciary claim is untimely.

3.     Whether Plaintiffs' fiduciary claim should, in the alternative, be dismissed for failure to state a claim.

## STATEMENT OF THE CASE

This appeal arises from a civil ERISA suit brought by Plaintiffs-Appellants Joshua Knight, Michael Campbell, and Ernest Fabrizio—all of whom are retired IBM employees. Defendants-Appellees IBM, the Committee, and the Plan moved to dismiss the case as untimely. Judge Nelson Román (S.D.N.Y.) granted the

3

motion, entering judgment for all Defendants. *See Knight v. Int'l Bus. Machs. Corp.*, No. 22-CV-4592, 2024 WL 1466817 (S.D.N.Y. Apr. 4, 2024).

### A.  Legal Background.

ERISA neither "requires employers to establish employee benefits plans" nor "mandate[s] what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).  Instead, it "'induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct.'" *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002)).  And it imposes requirements to ensure that whatever benefits an employer promises will be paid.  *See Lockheed*, 517 U.S. at 887.

***ERISA's Division of Responsibilities and Obligations.***  ERISA imposes different obligations on the entities involved with benefit plans based on the different roles they play.  *See Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).  In general, ERISA contemplates a "division of authority between [1] a plan's sponsor and [2] the plan's administrator." *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011).  "ERISA carefully distinguishes these roles," and there is "no reason to believe that the statute intends to mix the[ir] responsibilities." *Id.*

Specifically, plan sponsors, such as employers, establish or maintain ERISA plans. *Janese v. Fay*, 692 F.3d 221, 226 (2d Cir. 2012); 29 U.S.C. § 1002(16)(B).

Sponsors may adopt, amend, or terminate plans; they function like trust settlors. *Amara*, 563 U.S. at 437; *Lockheed*, 517 U.S. at 890. While ERISA contains certain *statutory* restrictions on how benefit plans may be structured or modified, plan sponsors are not bound by any *fiduciary* obligations when they engage in such activities. *See id.* at 890-91.

By contrast, plan administrators serve as "trustee-like" fiduciaries who "manage[] the plan" and "follow[] its terms in doing so." *Amara*, 563 U.S. at 437. Fiduciaries are bound by ERISA-based duties when they "'fulfill[] certain defined functions, including the exercise of discretionary authority or control over plan management or administration.'" *Lockheed*, 517 U.S. at 890 (citation omitted). These include the duties of loyalty and prudence, as well as the obligation to follow plan terms to the extent they are consistent with ERISA. *See* 29 U.S.C. § 1104(a)(1).

Because these distinctions turn on the *role* being exercised, not the identity of the entity exercising the role, the same entity "may wear different hats." *Pegram*, 530 U.S. at 225. In other words, a single entity may at times act as a settlor, and at other times, as a fiduciary. *See id.* "ERISA does require, however, that the [entity] with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Id.*

***A Plan Sponsor's Statutory Obligations.*** This case involves ERISA provisions that govern a plan sponsor's ability to structure or modify a benefit plan.

Specifically, ERISA mandates that plans make "an employee's right to his normal retirement benefit … nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a). It limits a plan sponsor's design and amendment of benefit formulas. *Id.* § 1054. And it requires plans to offer married couples at least two joint and survivor annuity options. *Id.* § 1055.

ERISA further directs that the two required joint and survivor annuities be the "actuarial equivalent" of the relevant single life annuity, but it nowhere defines that phrase. *Id.* §§ 1055(d)(1)(B), (d)(2)(A)(ii). The statute does not specify the interest rate or mortality table that should be adopted for the actuarial equivalence calculation. Nor does it expressly require the use of "reasonable" assumptions. This silence stands in stark contrast with other ERISA provisions that *do* mandate these kinds of requirements. *See id.* §§ 1055(g), 1083(h), 1085a(c)(3)(A), 1393(a)(1).

While ERISA is silent, the U.S. Tax Code is not. It requires plans to specify the actuarial assumptions they use to calculate an actuarially equivalent joint and survivor annuity "in a way which precludes" the exercise of "discretion." 26 U.S.C. § 401(a)(25). In other words, the actuarial assumptions used to calculate joint and survivor annuities must be fixed in the plan document. Once included in the plan, those actuarial assumptions become part of the participant's "accrued benefit," 29 U.S.C. § 1054(g); 26 U.S.C. § 411(d)(6); 26 C.F.R. § 1.411(d)-3(b); Rev. Rul. 81-12, 1981-1 C.B. 228, and cannot be changed absent a plan amendment.

6

Thus, the law expressly requires plan sponsors to set the actuarial assumptions used to calculate benefits and treats those assumptions as part of the calculation that defines an employee's accrued benefit. But no law requires the use of specific actuarial assumptions. As is typical of ERISA, it leaves the decision of whether to offer benefits, what benefits to offer, and how to "calculat[e]" those benefits "to the private parties creating the plan." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 511 (1981).

Notably, ERISA itself does not contain a statute of limitations for claims involving plan design. *See Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 132 (2d Cir. 2021). Rather, "a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105-06 (2013). A court must "give effect to the [contractual] limitations provision unless [it] determine[s] either that the period is unreasonably short, or that a 'controlling statute' prevents the limitations provision from taking effect." *Id.* at 109.

*A Plan Administrator's Fiduciary Duties.* In addition to the statutory obligations detailed above, this case also involves certain duties ERISA imposes on plan administrators when they act in a fiduciary capacity. As relevant here, the duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely

7

in the interest of the participants and beneficiaries" and "for the exclusive purpose" of "providing benefits" or "defraying reasonable expenses." 29 U.S.C. § 1104(a)(1)(A). The duty of prudence mandates that a fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). And the duty to follow plan documents dictates that a fiduciary act "in accordance" with the "instruments governing the plan insofar as such documents … are consistent with" ERISA. *Id.* § 1104(a)(1)(D).

By statute, a claim for breach of these duties must be brought within "six years" of "the date of the last action which constituted a part of the breach or violation" or "three years" of "the earliest date on which the plaintiff had actual knowledge of the breach or violation"—whichever is earlier. *Id.* § 1113.

### B. Factual Background.

Plaintiffs are participants in the Plan (*see* A50-51 ¶¶ 25-37), a tax-qualified, defined benefit pension plan subject to ERISA (A51 ¶¶ 28-31). IBM is the Plan's sponsor (A51 ¶¶ 28-29); the Committee serves as the "Plan Administrator" and named fiduciary (A52 ¶¶ 35-37). A contractual, two-year limitations period applies to claims arising under the Plan. A121-23.

8

The Plan initially calculates benefits as a single life annuity—that is, as a stream of payments made to the participant each month from retirement until death. A235 § A-1.1; A257 § A-4.2(b)(1). However, the Plan also offers joint and survivor annuities to married participants. *E.g.*, A257 § A-4.2(b)(2). Those annuities provide the participant monthly payments for his or her lifetime; after the participant dies, the participant's spouse receives 50% (or any other whole percentage selected) of those monthly payments for the remainder of his or her life. *Id.*; A257-58 § A-4.2(c)(2).

A participant's benefits under the Plan are converted from a single life annuity to a joint and survivor annuity using an interest rate and a mortality table. A46 ¶¶ 6-7. As required by law, the Plan's interest rate and mortality table are specified in its "Plan Document": "8% interest and the UP-1984 Mortality Table with a three-year setback for Participants and a six-year setback for Beneficiaries." A57 ¶ 64; A259 § A-4.2(e). These actuarial assumptions were disclosed to participants, not only in the Plan Document, but also in the Summary Plan Description ("SPD") and in so-called pension projection statements, which explained the benefit payment options available at the time of their retirement elections as well as the relative value of those options. A535, 572, 577-78 (2015 SPD); A601-02, 638, 645-46 (2010 SPD); A651, 658 (Knight projection statement, dated October 22, 2015); A687, 696 (Fabrizio

projection statement, dated April 16, 2018); A733, 742 (Campbell projection statement, dated July 9, 2019).

Ultimately, all Plaintiffs elected to receive their pension benefits as a joint and survivor annuity. A50-51 ¶¶ 25-27. Each Plaintiff is now retired and receiving the annuity payments promised under the Plan. *See* A683-85 (Knight election form, signed on December 15, 2015, with benefits commencing January 1, 2016); A724, 730 (Fabrizio election form, signed on August 10, 2018, with benefits commencing on July 1, 2018); A767, 772 (Campbell election form, signed on July 25, 2019, with benefits commencing August 1, 2019).

### C. Procedural Background.

On June 2, 2022, Knight initiated this putative class action against IBM, the Committee, and the Plan. A43. On August 19, 2022, Plaintiffs filed an Amended Complaint to add Campbell and Fabrizio. A50-51, 77.

The crux of Plaintiffs' Amended Complaint is that the Plan used outdated actuarial assumptions—specifically, the UP-1984 mortality table—to convert their pension benefits from a single life annuity to a joint and survivor annuity. A45-48 ¶¶ 2-14; A57-58 ¶¶ 64-73. On Plaintiffs' theory, ERISA implicitly requires the Plan to use "reasonable" actuarial assumptions to calculate retiree benefits; the Plan's actuarial assumptions are not reasonable; and as a result, their pension benefits have been unlawfully reduced. A45-48 ¶¶ 2-14; A67-75 ¶¶ 118-57. Plaintiffs thus

maintain that IBM, the Plan, and the Committee violated various provisions of ERISA that relate to plan design and amendment. *See, e.g.*, 29 U.S.C. § 1055 (Count I); *id.* § 1054 (Count II); *id.* § 1053 (Count III); A67-72. In addition to these three statutory claims, Plaintiffs allege that the Committee breached its fiduciary duties by presiding over a plan that did not comply with ERISA. A72-75 (Count IV).

Defendants moved to dismiss the Amended Complaint on timeliness grounds. In connection with their motion, Defendants submitted documents integral to the Amended Complaint, including Plaintiffs' projection statements, their benefit election forms, the governing Plan Documents, and the applicable SPDs. Defendants explained that they had (repeatedly) disclosed the material facts underlying Plaintiffs' claims in those documents, and Plaintiffs themselves alleged that they had received, read, and "relied upon" that material when electing their benefits. A62 ¶ 96; *see also* A57 ¶ 64; 63 ¶ 97. That sufficed to show that Plaintiffs had not only constructive knowledge of their statutory claims (Counts I-III), but also actual knowledge of their fiduciary claim (Count IV) well outside the applicable limitations periods.

In addition, Defendants sought dismissal of Count IV on the ground that Plaintiffs' fiduciary claim failed as a matter of law. As Defendants detailed, the selection or amendment of the Plan's actuarial assumptions is *not* a fiduciary task.

Nor does ERISA permit Plaintiffs to fault the Committee either for calculating benefits exactly as the Plan requires or for accurately disclosing those calculations.

The district court granted Defendants' motion to dismiss. SA1-11. Relying primarily on the projection statements, it first concluded that Defendants had "disclosed to Plaintiffs the material facts of their statutory claims," namely, that "when the Plan converts a single life annuity to a joint and survivor annuity, it uses an 8% interest rate and the UP-1984 mortality table." SA7. And because Defendants provided that information to Plaintiffs "more than two years before this action was filed," the statutory claims were untimely under the Plan's express limitations period. SA8.

With respect to the fiduciary claim, the court noted that Plaintiffs had made "no attempt to explain why" ERISA's three-year statute of limitations should not apply. SA8-9 (citing 29 U.S.C. § 1113). Nor did Plaintiffs "attempt to distinguish" a case "involving strikingly similar facts," which held that a plaintiff had "actual knowledge" of an "'alleged fiduciary breach'" upon receipt of his "first pension payment." SA9 (quoting *Masten v. Metro. Life Ins. Co.*, 543 F. Supp. 3d 25, 38 (S.D.N.Y. 2021)). The court explained that because Plaintiffs here had "even more" information "three years prior" to filing suit—i.e., projection statements that "disclosed all the facts relevant to their claim"—their allegations of fiduciary breach were likewise untimely. SA9-10.

Having concluded that Plaintiffs' claims were time-barred, the district court did not reach Defendants' alternative grounds for dismissing Plaintiffs' fiduciary claim on the merits. It entered judgment for Defendants, SA11, and Plaintiffs appealed, A774.

## SUMMARY OF ARGUMENT

**I.** Plaintiffs' statutory claims are time-barred. It is undisputed that, to start the limitations period, Plaintiffs needed only constructive knowledge of the relevant facts. They unquestionably had such knowledge.

Plaintiffs contest the Plan's use of purportedly outdated actuarial assumptions to calculate their benefits. But in the years prior to this suit, Defendants repeatedly disclosed those assumptions to Plaintiffs, identifying the very mortality table they now challenge. Defendants further explained that the use of different actuarial assumptions could lead to different results and offered to answer any questions Plaintiffs might have about the assumptions employed. Plaintiffs *admit* that they received, read, and relied on these disclosures when making their benefits elections, all of which took place more than two years before they filed this lawsuit. Accordingly, Plaintiffs knew (or at least should have known) the facts underlying their claims well outside the limitations period.

Plaintiffs' contrary arguments blink at this straightforward reality. Specifically, Plaintiffs maintain that they could not have known the basis of their

13

claims without hiring experts. But this argument confuses the *facts* (the assumptions the Plan employed to calculate Plaintiffs' benefits) with Plaintiffs' *legal theory* (that they should have received higher benefits under a different methodology). To start the limitations period, Plaintiffs needed constructive knowledge of only the former. Without question, they had all the facts about how their joint and survivor annuities were calculated more than two years before they filed suit. And those facts were not particularly complicated: the Plan used the UP-1984 mortality table and an 8% interest rate to calculate their benefits.

**II.** For similar reasons, Plaintiffs' fiduciary claim is untimely. Citing the Supreme Court's decision in *Intel*, Plaintiffs argue that the district court erroneously concluded that they possessed actual, subjective knowledge of the material facts underlying their claim. But the Supreme Court made clear that nothing in *Intel* altered a district court's ability to infer actual knowledge from circumstantial evidence, even at the pleadings stage. 589 U.S. at 189. That is precisely what the district court did here.

**III.** In any event, this Court can affirm the dismissal of Plaintiffs' fiduciary claim for an alternative reason: it fails as a matter of law. Plaintiffs fault the Committee for failing to update the Plan's actuarial assumptions, for applying those assumptions to calculate Plaintiffs' benefits, and for alleged misrepresentations regarding those calculations. But amending a plan's actuarial assumptions does not

14

involve fiduciary conduct. Nor does the calculation of benefits according to a plan's written terms. Regardless, there is no duty to deviate from plan terms when calculating benefits, much less when disclosing projected benefit amounts to participants. To hold otherwise would foist a host of complex and recurring obligations on plan administrators, whose job is to enforce plan terms, not to question or rewrite them.

Accordingly, this Court should affirm the dismissal of Plaintiffs' Amended Complaint.

## STANDARD OF REVIEW

This Court reviews *de novo* a grant of a motion to dismiss. *See City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 390 (2d Cir. 2024). It may "'affirm on any ground with support in the record,' 'including grounds upon which the district court did not rely.'" *Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 100 (2d Cir. 2022) (citation omitted). In evaluating a dismissal order, this Court considers the complaint, "materials incorporated in it by reference," and "documents that … are 'integral'" to it. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted).

## ARGUMENT

## I.   PLAINTIFFS' STATUTORY CLAIMS ARE UNTIMELY.

### A.   The Plan's Limitations Period Bars Plaintiffs' Statutory Claims.

Plaintiffs admit that their first three claims—the statutory claims—are "subject to" the Plan's two-year limitations period. *See* Pls. Br. 40.  Under the Plan, this limitations period begins to run on "the earliest date on which the claimant knew or should have known of the material facts on which such claim or action is based, regardless of whether the claimant was aware of the legal theory underlying the claim or action."  A122-23, 339.  This specifically includes "the date on which [claimants] receive (or are granted access to) a benefit statement" that includes the material facts "on which [their] claim is based."  A558.

The Plan thus establishes a constructive knowledge standard similar to, but easier to trigger than, the federal discovery rule for ERISA claims generally. *Compare Novella v. Westchester County*, 661 F.3d 128, 147 (2d Cir. 2011) (holding that "the statute of limitations will start to run" "when there is enough information available to the pensioner to assure that he knows or reasonably should know" of the factual basis for his claim); Pls. Br. 44-45 (describing *Novella* as "controlling here"), *with* A122, 339 (requiring only that the "claimant knew or should have known of the material facts" on which the claim is based).  The Plan's should-have-known standard is necessarily "objective."  *Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176, 198 (2d Cir. 2002).  It turns not on what the Plaintiffs in fact knew, but on what

"a hypothetical reasonably diligent plaintiff" should have known. *Merck & Co. v. Reynolds*, 559 U.S. 633, 646-47 (2010).

In addition, by its terms, the Plan's limitations provision does *not* require a plaintiff to grasp all the facts underlying his case. *See Corcoran v. New York Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999). It requires only knowledge—whether actual or constructive—"of the material facts on which such claim or action is based." A122, 339. Accordingly, to trigger the limitations period, Plaintiffs did not need to know the legal basis for their claim, much less the exact economic consequences if they were to prevail. The limitations period begins "regardless of whether the claimant was aware of the legal theory underlying the claim or action." A122, 339.

Applying the Plan's provisions here, Plaintiffs' statutory claims accrued well outside the limitations period. Plaintiffs affirmatively allege that IBM "provided information to Class members concerning the amount of retirement benefits they would receive under various forms of retirement benefit." A63 ¶¶ 97-98. As Plaintiffs conceded below, those communications included their projection statements. Pls' Opp. Br., D.Ct. Dkt. 49 at 7, 23 (admitting that the projection statements are "the exact communications referred to in the Complaint"). In addition to disclosing the value of the various forms of benefits available to Plaintiffs, those statements explained that "[t]he relative value of any qualified pension benefit in an

17

annuity form is determined using an interest rate of 8% and average life expectancies based on the UP-1984 mortality table—with your age reduced by three years and your beneficiary's age, if applicable, reduced by six years from the associated ages in the table." A658, 696; *see also* A742 (similar). They noted that different, and more recent, mortality tables are used for other calculations. A658, 696, 742. They warned that "[s]ignificant variations" in the variables used for the actuarial calculations can have a "material impact on the relative value of any optional form to the single life annuity form." A658, 696, 742. And they counseled participants to "contact the IBM Employee Services Center" if they "would like more information about the actuarial assumptions used." A658, 696, 742.

These disclosures started the two-year limitations period because they included all the "material facts"—in particular, the mortality table and methodology used to value the various annuities—on which Plaintiffs base their claims. A121-23. The disclosures unquestionably showed (A658, 696, 742) that IBM calculated benefits for a joint and survivor annuity using the allegedly "outdated" UP-1984 mortality table. *See, e.g.*, A45-46 ¶ 2; A47-48 ¶ 13; A50-51 ¶¶ 26-27; A57-58 ¶¶ 65-70, 72-73; A59 ¶ 74; A63 ¶ 98; A64 ¶ 106; A69 ¶ 131. And they highlighted that the use of different actuarial assumptions could produce different results, inviting further communication on this issue as needed. *See* A658, 696, 742.

This Court has held that where, as here, a plaintiff contests the manner in which a benefit is calculated, "actual notice to a pensioner that [the challenged] method was used would put [the plaintiff] on notice" of a claim for limitations purposes. *Novella*, 661 F.3d at 148. Such information is enough to alert plaintiffs "'that the defendants believed the method used to calculate [their] pension was correct,'" which suffices to start the clock. *Id.* at 144 (citation omitted). This Court has applied this same rationale in *Testa v. Becker*, 910 F.3d 677, 680, 682 (2d Cir. 2018), holding that disclosure of a challenged "hypothetical interest deduction" triggered the limitations period. *Id.* at 680, 682 (citation omitted). Based simply on the inclusion of that information in the summary plan description, the Court reasoned that the plaintiff knew or should have known the basis for the claim. *See id.* at 682.

Because Plaintiffs' projection statements similarly disclose the methodology they now challenge, the limitations period began to run when they "receive[d]" those statements. A558, 122. And on that front, all of the projection statements are dated more than two years before Plaintiffs' filed suit. *See* SA6 (collecting dates). Moreover, Plaintiffs affirmatively allege that they "relied upon" these statements when "deciding if and when to retire, and what form of benefit to elect." A62 ¶ 96. Plaintiffs decided to retire, elected their benefits, and received their first pension payments more than two years before commencing this action. *See* A683-85 (Knight); A724, 730 (Fabrizio); A767, 772 (Campbell); *supra* pp. 9-10.

19

In addition to the projection statements, the Plan's SPD disclosed the same information. It notes that to "convert a single life annuity benefit to another annuity form of benefit"—including a joint and survivor annuity—"the Plan uses the UP-1984 mortality table." A535, 572, 577-78 (2015 SPD); A601-02, 638, 645-46 (2010 SPD). Plaintiffs had access to the SPD at any time via a web portal, A517, 586, and their projection statements stated that they could obtain a copy online or by calling the IBM Employee Services Center, A651, 665 (Knight); A687, 703 (Fabrizio); A733, 749 (Campbell).

Nothing more was needed to put Plaintiffs on notice of the SPD's contents. Plan sponsors are required by law to distribute SPDs. 29 U.S.C. § 1022(a). And those documents "play a 'central role … in communicating the terms of a plan to its members.'" *Testa*, 910 F.3d at 682 (citation omitted). Courts thus "routinely" conclude that an SPD puts plaintiffs on constructive notice under a "should [have] known" standard. *Id.*[1] Indeed, so long as the SPD is available to plaintiffs, they have constructive knowledge regardless of whether they request or review it.[2] *Cf.*

---

[1] *E.g.*, *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 410 (6th Cir. 2010); *Hirt v. Equitable Ret. Plan for Emps., Managers & Agents*, 285 F. App'x 802, 804 (2d Cir. 2008); *Bilello v. JPMorgan Chase Ret. Plan*, 607 F. Supp. 2d 586, 594-97 (S.D.N.Y. 2009).

[2] *E.g.*, *Barnes v. Lacy*, 927 F.2d 539, 543 (11th Cir. 1991) (Plan and SPD "available" to all employees); *Clark v. NBD Bank*, 3 F. App'x 500, 504 (6th Cir. 2001) (participants could "obtain copies" of the plan); *Castello v. Gamache*, 593 F.2d 358, 359, 361 (8th Cir. 1979) (no indication that plaintiff "request[ed] or receive[d]" a

20

*Jordan v. Fed. Exp. Corp.*, 116 F.3d 1005, 1016 (3d Cir. 1997) ("[P]articipants have a duty to inform themselves of the details provided in their plans.").

Thus, Defendants' disclosures in the SPD independently started the limitations period. *Novella*, 661 F.3d at 148. And at the latest, Plaintiffs had access to that document upon receipt of their projection statements, A651, 687, 733, which was more than two years before the commencement of this action, *supra* pp. 9-10.

## B. Plaintiffs' Contrary Arguments Cannot Withstand Scrutiny.

Plaintiffs' contrary arguments, which seek to expand the knowledge required under the Plan's limitations provision, lack merit.

***Conflating fact and legal theory.*** Plaintiffs repeatedly argue that Defendants' disclosures were inadequate because they did not provide Plaintiffs knowledge of their injuries, which Plaintiffs call "the most critical fact of Plaintiffs' statutory ERISA claims." Pls. Br. 18, 44-45, 47-48, 50. But Plaintiffs' "injury" is an economic consequence that follows (if at all) from their legal theory. If Plaintiffs' interpretation of ERISA is correct, Defendants may have been obligated to apply a different mortality table, which may (or may not) have increased Plaintiffs' benefits. That is Plaintiffs' legal theory, not the facts underlying it. And the Plan's limitations provision expressly states that the limitations period begins "regardless of whether

---

copy of an insurance policy "available" to all employees); *Manginaro v. Welfare Fund of Loc. 771, I.A.T.S.E.*, 21 F. Supp. 2d 284, 296, 299 (S.D.N.Y. 1998) ("Plaintiffs' failure to read the SPD does not alter this conclusion.").

the claimant was aware of the legal theory underlying the claim or action." A122, 339.

This Court's decision in *Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992), illustrates the difference. There, the plaintiff belatedly discovered she was the daughter of a deceased famous singer and claimed a statutory entitlement to the singer's royalties. *Id.* at 1046, 1048. This Court held that the relevant limitations period began when the plaintiff learned (or should have discovered) "the facts giving rise to her statutory entitlement," *id.* at 1048—that is, when the plaintiff "was put on notice" of her relationship to the singer. *Id.* at 1049. In doing so, the Court rejected the plaintiff's argument that "such knowledge was insufficient" because the plaintiff did not then know "she was suffering *economic* injury." *Id.* That "injury," the Court explained, was nothing more than the result of the plaintiff's "*legal*" theory. *Id.* (emphasis added). As such, it was not a "fact" necessary to trigger the limitations period. *Id.* ("[T]he legal rights that stem from certain facts or circumstances need not be known, only the facts or circumstances themselves.").

So too here. Plaintiffs did not need to hire an expert to calculate their asserted "economic injury" for the limitations period to run. *Id.*; *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (explaining that a plaintiff cannot wait to file suit until he realizes certain facts "implicate[] a cognizable legal claim"). When

22

Defendants disclosed the "method" used to calculate their benefits, Plaintiffs were required to act to preserve their legal claims. *Novella*, 661 F.3d at 148.

To hold otherwise would effectively "place defendants in the untenable position of either admitting liability or for[going] a statute of limitations defense." *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1221 (10th Cir. 2000). On Plaintiffs' theory, the limitations period for their statutory claims would *never* run without Defendants (i) confessing error; (ii) providing Plaintiffs with a second, alternative benefits calculation under actuarial assumptions that were *not* part of the Plan (and Defendants had no reason to apply); or (iii) waiting for Plaintiffs to determine their own accrual date by deciding when to hire an expert. Limitations law does not work like this; it is a limit on plaintiffs' ability to file suit, not a command for "voluntary self-incrimination." *IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, No. 14-CV-3443 JSR, 2015 WL 1516631, at *5 (S.D.N.Y. Mar. 26, 2015), *aff'd*, 634 F. App'x 19 (2d Cir. 2015); *United States v. Inc. Village of Island Park*, 791 F. Supp. 354, 375 (E.D.N.Y. 1992) (refusing to adopt a rule that would "foreclose the operation of the statute of limitations for any action in which the defendant did not concede liability").

In all events, to the extent some knowledge of injury is required, the Plan's limitations provision makes clear that constructive knowledge suffices—a point Plaintiffs and their cited authority recognize. Pls. Br. 44 (stating that "'a plaintiff's

cause of action accrues when he discovers, *or with due diligence should have discovered*, the injury that is the basis of the litigation'" (quoting *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) (emphasis added)); A122 (requiring only constructive knowledge of the "material facts"). And Defendant's disclosure of the Plan's actuarial assumptions, coupled with Plaintiffs' obligation to conduct reasonable diligence, "put [Plaintiffs] on notice" of the basis for their claim. *Novella*, 661 F.3d at 148.

**Alleged Complexity.** Perhaps recognizing the weakness in their position, Plaintiffs alternatively argue that they could not have conducted reasonable diligence (Pls. Br. 43-50), because calculating their benefits under the "correct" table would have required "a series of complex deductions" as well as "a sophisticated understanding of actuarial calculations" that they lacked. Pls. Br. 39. This argument is flawed on many levels.

At the outset, complexity itself cannot preclude application of a limitations period. To the contrary, identifying the underlying grounds for a legal claim often involves "real complexity" that requires "considerable enquiry and investigation." *Rotella v. Wood*, 528 U.S. 549, 556 (2000). But that does not excuse a plaintiff from reasonable diligence. *See id.* If a plaintiff has the critical facts, "[t]here are others who can tell him if he has been wronged," including lawyers and experts in the field.

24

*United States v. Kubrick*, 444 U.S. 111, 122 (1979) ("competent doctors"); *see also Corcoran*, 202 F.3d at 544 ("legal advice").

Here, Plaintiffs had those critical facts: they were told the actuarial assumptions used to calculate their joint and survivor annuities and were informed that those assumptions could have a "material impact" on their benefits' value. A658, 696, 742; *supra* pp. 9-10, 17-18, 20. That information triggered the limitations period. *See Kronisch*, 150 F.3d at 121 (explaining that "a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice" (citation omitted)); *Hertz v. United States*, 560 F.3d 616, 618 (6th Cir. 2009) (observing that "a claim accrues when a plaintiff possesses enough information" to protect herself by seeking "independent legal and expert advice" (citation and brackets omitted)).

Plaintiffs' contrary argument rests almost exclusively on *Osberg v. Foot Locker, Inc.*, 862 F.3d 198 (2d Cir. 2017). But *Osberg* dealt with "wear-away," which can effectively freeze pension benefits in the transition from a traditional defined benefit pension formula to a cash balance formula. *Id.* at 201. In that case, the company deliberately "fail[ed] to disclose" the wear-away; in fact, plan materials were "designed" "to conceal" it with "intentionally false and misleading" information. *Id.* at 203, 209. Thus, the only way a plaintiff could learn "of the

25

existence of wear-away" was truly via a "heroic chain of deductions." *Id.* at 207, 208.

Here, Defendants neither misrepresented the Plan's terms nor concealed anything. *See* Pls. Br. 21 n.6 (conceding the "fraud or concealment" timing rule is "not at issue"); *infra* pp. 50-51. *Osberg* thus has no application here. 862 F.3d at 208 (limiting its holding to circumstances "where a plan fiduciary … makes misstatements and omissions to conceal an injury from plan participants"). And no "heroic chain of deductions" was needed to discover the manner in which Plaintiffs' benefits were calculated. Defendants disclosed the tables they used—repeatedly. *Supra* pp. 9-10, 17-18, 20. Plaintiffs did not have to dig through "opaque guidance," and they were not deprived of information about "the mechanics underlying their benefits." 862 F.3d at 207. At most, they needed only to conduct run-of-the-mill diligence by asking follow-up questions or seeking legal counsel.

Indeed, Plaintiffs' theory would eviscerate any obligation to conduct reasonable diligence regarding their benefits, allowing them to sue on their own timetable. *Novella*, 661 F.3d at 147-48; *cf. Rotella*, 528 U.S. at 554. That would "thwart[] the basic objective of repose underlying the very notion of a limitations period." *Id.* Indeed, if mere complexity excused plaintiffs from engaging in due diligence, any limitations period implicating complex subjects (e.g., finance, science, medicine) would be a dead letter. *See Novella*, 661 F.3d at 147-48;

*Thompson v. Ret. Plan for Emps. of S.C. Johnson & Sons, Inc.*, 716 F. Supp. 2d 752, 772 (E.D. Wis. 2010), *aff'd*, 651 F.3d 600 (7th Cir. 2011). That has never been the law: a plaintiff cannot "sidestep the statute of limitations until he understands [complex] information." *Id.*

*Purported Factual Disputes.* Plaintiffs also insist that "fact-intensive question[s]" should have kept the district court from "even tak[ing] up the statute of limitations defense … on a motion [to] dismiss." Pls. Br. 1, 18, 38-39. But there are no disputed facts. Plaintiffs *admit* that they relied on the pension statements. *See* A62 ¶ 96; Pls' Opp. Br., D.Ct. Dkt. 49 at 7, 23. And those statements list all the relevant actuarial assumptions, including the challenged mortality table. A658, 696, 742. The only question before this Court is whether the Plan's objective, should-have-known standard was satisfied on the undisputed facts—an analysis courts regularly conduct on motions to dismiss. *E.g.*, *Testa*, 910 F.3d at 681-82; *Moses v. Revlon Inc.*, 691 F. App'x 16, 17-18 (2d Cir. 2017); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145, 150-51 (2d Cir. 2012); *United States v. The Baylor Univ. Med. Ctr.*, 469 F.3d 263, 268 (2d Cir. 2006); *LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 156 (2d Cir. 2003) (highlighting "vast number" of cases resolving timeliness under Rule 12(b)(6)).

Plaintiffs' claim that the should-have-known standard must "be decided on a complete record by a factfinder," not "on a motion to dismiss," Pls. Br. 18, 41-43,

conflicts with this precedent, and none of their cited cases holds otherwise. In fact, one acknowledged the "numerous cases" where this Court deemed a claim time-barred as a matter of law. *See Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2d Cir. 1979). And all dealt with facts giving rise to "conflicting inferences," usually in cases where the defendant had concealed the relevant information or engaged in fraud. *Id.* at 591-92 (fraud, which the plaintiff "intensive[ly] investigat[ed]"); *see, e.g.*, *Friedman v. Meyers*, 482 F.2d 435, 439 (2d Cir. 1973) (fraud case "bristle[d]" with fact disputes, including inferences on "questions of motive, intent, and subjective feelings and reactions"); *Yeadon v. New York City Transit Auth.*, 719 F. Supp. 204, 209 (S.D.N.Y. 1989) (fact dispute over tolling based on "fraudulent concealment"). That did not occur here. *See* Pls. Br. 21 n.6. Again, Defendants *repeatedly disclosed* the very actuarial assumptions Plaintiffs now challenge.

Separately, Plaintiffs claim that there is a factual dispute over whether the projection statements reveal "the actuarial assumptions [actually] used to calculate Plaintiffs' pension benefits." Pls. Br. 55. According to Plaintiffs, Treasury regulations allow the use of assumptions for "relative value" purposes that are "not necessarily" those employed by the Plan to calculate joint and survivor annuities. Pls. Br. 47-48 (citing 26 C.F.R. § 1.417(a)(3)-1). That may be theoretically correct, but that theory is irrelevant here: it is undisputed that the actuarial assumptions

28

disclosed in the projection statements were actually used by the Plan to convert Plaintiffs' benefits. *See* A742 ("Any protected Prior Plan based qualified pension benefit payable in an annuity form is determined using an interest rate of 8% and average life expectancies based on the UP-1984 mortality table …."). And given that the statements provided an "estimate" of a participant's "benefits payable from the Plan" based on their "actual pension-eligible earnings," *e.g.*, A651, 658, a reasonable participant could hardly conclude otherwise. But to the extent any questions persisted regarding the "actuarial assumptions used," such a participant would have resolved them by "contact[ing] the IBM Employee Services Center" for "more information," A658, 696, 742, or by consulting the proffered SPD, A651, 687, 733.

Although Plaintiffs now insist it would be unreasonable "to expect the average plan participant to recognize" that the actuarial assumptions disclosed in "the 'calculation note'" were the Plan's, Pls. Br. 47-49, their assertion is belied by the Amended Complaint itself. Plaintiffs affirmatively allege that *they* understood the projection statements to "calculate[] the value of [their] benefits *using the Plan's outdated and unreasonable actuarial assumptions*." A63 ¶¶ 97-98 (emphasis added). To suggest that a reasonable participant would draw a different conclusion based on a complex regulation referenced nowhere in the projection statements is not tenable.

***Materials Outside of the Complaint.*** Plaintiffs' argument that the district court wrongly analyzed materials outside the Amended Complaint is equally without merit. Pls. Br. 50-57. It may be true that "[n]o allegations on the face of the Amended Complaint indicate that Plaintiffs knew or should have known of their statutory claims more than two years before filing suit." *Id.* at 51. But to avoid incentivizing this sort of "clever drafting," *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006), courts routinely rely on documents "integral" to or "incorporated" by reference into a complaint to dismiss on limitations grounds. *E.g.*, *Bilello*, 607 F. Supp. 2d at 594-97; *Masten*, 543 F. Supp. 3d at 38. That is exactly what the district court did here.

Plaintiffs' contention that the Amended Complaint did not "'rel[y] on and ma[k]e reference to'" the projection statements flatly contradicts their arguments in the district court. Pls. Br. 52 (citation omitted). There, Plaintiffs *admitted* that "the Complaint makes references to the Plan Document and Pension Projection Statements." Pls' Opp. Br., D.Ct. Dkt. 49 at 7; *see id.* at 23 ("Defendants have apparently identified the exact communications referred to in the Complaint and attached them to their motion to dismiss ....."). The district court relied on this concession in considering the documents. SA5 n.1. Plaintiffs cannot now "'shift[ their] position on appeal.'" *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005) (citation omitted).

In any event, Plaintiffs' Complaint repeatedly references—and relies heavily on—the projection statements' terms. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). Plaintiffs allege that (i) Defendants were required by law to provide Plaintiffs and class members with "communications" about various benefit options; (ii) Defendants "provided" this "information" to "Plaintiffs" and "Class members"; (iii) those "communicat[ions]" "calculated the value" of "joint and survivor annuities" using "the Plan's outdated and unreasonable actuarial assumptions"; and (iv) Plaintiffs "relied upon the accuracy and sufficiency of [this] information … to plan for retirement." A62-64 ¶¶ 93-106 (citing 26 C.F.R. § 1.417(a)(3)-1). These allegations all refer to the projection statements. *See* A658, 696, 742.[3]

Contrary to Plaintiffs' assertion that they did not "'rely on the terms and effect'" of those statements "'in drafting the complaint,'" Pls. Br. 53 (citation omitted), these allegations provide *the entire factual basis* for Plaintiffs' claim that Defendants "misrepresent[ed]" the value of their joint and survivor annuities by "providing inaccurate and misleading information." *Compare* A62-64 ¶¶ 93-106, *with* A73 ¶ 151.C. That is more than enough to satisfy either the incorporated-by-

---

[3] Moreover, Plaintiffs further pled that the referenced "disclosures" "utilize four different sets of actuarial assumptions to calculate the value" of the "four different forms of benefit" they compare. A63 ¶ 99. Plaintiffs' projection statements match that description. A658, 696; *see also* A742.

reference or integral-to-the-complaint standard. *E.g.*, *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (finding a prospectus "integral to the complaint" since it contained "an alleged written misrepresentation" upon which the plaintiff's claim was based); *cf. Kramer v. Time Warner Inc.*, 937 F.2d 767, 769-70, 773-74 (2d Cir. 1991) ("[A] plaintiff whose complaint alleges that [certain] documents are legally deficient can hardly show prejudice resulting from a court's studying of the documents.").

Plaintiffs appear to suggest (without support) that the projection statements cannot be considered in connection with their statutory claims, because those claims do not "depend" on any material from those documents. Pls. Br. 53-54. But it is the "*complaint*"—not a particular claim—that is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that … are 'integral.'" *Sira*, 380 F.3d at 67 (emphasis added) (citations omitted). Put differently, such documents are equivalent to "an exhibit" to a complaint, which "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

Plaintiffs' assertion that the district court could not consider the projection statements because the record does not establish that Plaintiffs "actually received" them, Pls. Br. 54-56, also directly conflicts with Plaintiffs' position in the district court. Both in the Amended Complaint and in their briefing below, Plaintiffs *admitted* that they relied on the projection statements to elect their annuity benefit.

*See* A62-63 ¶¶ 96-97; Pls' Opp. Br., D.Ct. Dkt. 49 at 7, 23. They cannot have "relied upon" a document they failed to receive or review.[4] This case is thus unlike Plaintiffs' cited authority, where courts declined to consider a document a plaintiff expressly *denied* receiving. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A.*, 650 F. Supp. 3d 62, 73-74 (S.D.N.Y. 2023). Here, Plaintiffs' own pleadings (and the documents they incorporate) reveal that they received, read, and relied upon the projection statements more than two years before this lawsuit was filed. *Supra* pp. 9-10, 17-18, 20.[5]

---

[4] Moreover, when signing their benefit election forms, Plaintiffs averred they had received a "Special Tax Notice"; such a notice also appears in their projection statements. A667-70, 685 (Knight); A705-07, 726-27 (Fabrizio); A751-54, 771-72 (Campbell).

[5] In a footnote, Plaintiffs also dispute the remaining "categories of documents Defendants submitted with their motion." Pls. Br. 56 n.11. Courts, however, may "properly consider the Plan and the Summary Plan Description on motion to dismiss [where] they [are] essential to the plaintiffs' ERISA claims [or] incorporated by reference into their complaint." *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 568 n.3 (S.D.N.Y. 2012); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 545 n.22 (E.D.N.Y. 2011) (same). Those materials are incorporated by reference, *e.g.*, A52, 57 ¶¶ 32, 36-38, 64, and their "terms and effect" require the use of the challenged mortality table, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *supra* pp. 9-10, 20. Plaintiffs do not contest their accuracy, and as noted, *supra* p. 20, Plaintiffs need not plead receipt of these documents for them to be relevant, *contra* Pls. Br. 56 n.11.

Likewise, Plaintiffs' benefit election forms are integral to their claims since they effectuated Plaintiffs' selection of their joint and survivor annuities. *See Massimino v. Fid. Workplace Servs., LLC*, No. 1:15-CV-01046, 2016 WL 6893609, at *4 (W.D.N.Y. Nov. 23, 2016), *aff'd,* 697 F. App'x 85 (2d Cir. 2017) (considering

## II.   PLAINTIFFS' FIDUCIARY CLAIM IS UNTIMELY.

With respect to Plaintiffs' fiduciary claim—which Plaintiffs assert only against the Committee—the district court correctly concluded that it was time-barred as well.

### A.   Plaintiffs Had Actual Knowledge of the Material Facts Underlying Their Claim Three Years Prior to Bringing Suit.

Fiduciary claims must be commenced within "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation" of the fiduciary duty.  29 U.S.C. § 1113.  To be clear, the plaintiff does not need to know "the relevant law."  *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001).  Rather, a plaintiff has "actual knowledge" when the plaintiff knows the "material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act."  *Id.*; *see Intel*, 589 U.S. at 187 ("the plaintiff must in fact have become aware of th[e] information").  The material facts might include the "necessary opinions of experts, knowledge of a transaction's harmful consequences, or actual harm."  *Caputo*, 267 F.3d at 193 (quoting *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992)).  Receiving an "impermissibly reduced benefit" could

---

"change-of-beneficiary-designation forms," which were "essential to" the claims); *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 522 (S.D.N.Y. 2015) (relying on beneficiary designation forms to decide motion to dismiss); *cf. L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (considering emails "'integral' to the negotiation … identified as the basis for [the] Complaint").  They are also incorporated by reference.  A50-51 ¶¶ 25-27.

34

also support a reasonable inference of knowledge and commence the limitations period. *Gluck*, 960 F.2d at 1177.

As the Supreme Court recently instructed in *Intel*, actual knowledge can be established in "any of the 'usual ways'" and "at any stage in the litigation." 589 U.S. at 189. This includes "'inference from circumstantial evidence.'" *Id.* (quoting *Farmer*, 511 U.S. at 842). For example, "disclos[ure]" of the facts at issue "would no doubt be relevant" to such an inquiry. *Id.* So too would evidence showing that a plaintiff "read[]" or "viewed the relevant disclosures," particularly if he later "took action in response to the information contained in them." *Id.* at 189-90.

Since actual knowledge can be proved "at any stage in the litigation," *id.* at 189, this Court has repeatedly upheld orders dismissing complaints under Rule 12(b)(6) where actual knowledge exists as a matter of law. *E.g.*, *In re Citigroup Erisa Litig.*, 104 F. Supp. 3d 599, 615, 618 (S.D.N.Y. 2015), *aff'd sub nom. Muehlgay v. Citigroup Inc.*, 649 F. App'x 110, 111 (2d Cir. 2016) (holding plaintiffs had knowledge of imprudent investments where, "as alleged in their own complaint," public information "detail[ed] the threat" of those investments); *Oechsner v. Connell Ltd. P'ship*, 283 F. Supp. 2d 926, 929, 932-33 (S.D.N.Y. 2003), *aff'd*, 101 F. App'x 849 (2d Cir. 2004).[6] District courts within this Circuit have

---

[6] Both Plaintiffs and Amicus note that *Intel* "did not upset Second Circuit precedent." Pls. Br. 22; DOL Amicus Br. 12 n.2. This Court "already applied the correct

taken a similar approach, *see, e.g.*, *Masten*, 543 F. Supp. 3d at 29; *Guo*, 95 F. Supp. 3d at 529, as have district courts in other circuits, *e.g.*, *Lalonde v. Mass. Mut. Ins. Co.*, No. CV 22-30147, 2024 WL 1346027, at *5 (D. Mass. Mar. 29, 2024); *Smith v. Aetna*, No. 1:22-CV-00426, 2024 WL 760162, at *6 (D. Colo. Jan. 26, 2024); *Clarke v. Pilkington N. Am., Inc.*, No. 21-12119, 2022 WL 4483817, at *1 (E.D. Mich. Sept. 27, 2022).

Here, Plaintiffs failed to timely pursue their fiduciary claim after learning the relevant "material facts." *Caputo*, 267 F.3d at 193. Like their statutory claims, Plaintiffs' fiduciary claim arises from the Plan's use of purportedly outdated actuarial assumptions to calculate joint and survivor annuities. *See* Pls. Br. 31 (asserting the Committee breached its fiduciary duties by "applying" and failing to update "outdated" actuarial assumptions, which allegedly made representations of actuarial equivalence "false[]"). Plaintiffs' own pleadings, however, establish that they actually knew those assumptions when they made their benefit elections. Plaintiffs *specifically alleged* that they "relied upon the accuracy and sufficiency of information provided to them by Defendants" to "decid[e] if and when to retire, and what form of benefit to elect." A62 ¶ 96; *supra* pp. 17-18. They conceded this allegation refers to their projection statements, Pls' Opp. Br., D.Ct. Dkt. 49 at 7, 23,

---

standard before" that decision and has "continued to apply the correct standard after." Pls. Br. 22.

which were all dated outside the limitations period and which disclosed the use of the UP-1984 mortality table, *supra* pp. 9-10, 17-19. And Plaintiffs signed and submitted benefit election forms based on these statements more than three years prior to the filing of the relevant complaint. *Supra* pp. 9-10.[7] In other words, Plaintiffs *admit* that they received, "read," and "took action in response" to the "relevant disclosures" outside the limitations period. *Intel*, 589 U.S. at 189. That is enough to infer actual knowledge from those admissions and conclude that Plaintiffs claims were untimely.

Additional "circumstantial evidence" bolsters this "inference." *Id.* Defendants "disclosed" the use of the UP-1984 table in the SPD, *Intel*, 589 U.S. at 189, which Defendants made available to Plaintiffs, *supra* p. 20. And Plaintiffs received benefits payments calculated using the challenged table, *supra* p. 10, a fact other courts—like the district court here—have used to infer actual knowledge. *E.g.*, *Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1423 (9th Cir. 1988) (concluding that "[e]ach time [plaintiffs] received a

---

[7] It is undisputed that while the timeliness of Knight's claims must be measured against the original complaint's filing date, Fabrizio's and Campbell's claims must be measured against the Amended Complaint's filing. Mot., D.Ct. Dkt. 47 at 12 n.7. The original complaint was untimely, and Plaintiffs do not allege that Fabrizio and Campbell were omitted from it due to any "mistake." *See Levy v. U.S. Gen. Acct. Off.*, 175 F.3d 254, 255 (2d Cir. 1999) (per curiam); *Wilder v. News Corp.*, No. 11 CIV. 4947, 2015 WL 5853763, at *14-16 (S.D.N.Y. Oct. 7, 2015).

check, [they] had knowledge of the [challenged] transaction"); *Gluck*, 960 F.2d at 1177 (similar); *Masten*, 543 F. Supp. 3d at 38 (inferring the plaintiff's knowledge of a fiduciary breach based on when he "received his first payment"). This evidence renders the district court's holding that Plaintiffs had actual knowledge of the material facts underlying their fiduciary claim more than reasonable. SA8-10.

## B. Plaintiffs' Contrary Arguments Are Misplaced.

Nothing said by Plaintiffs or their Amicus undercuts the district court's analysis.

***Plaintiffs Received and Read the Relevant Material.*** Here, too, Plaintiffs repeatedly assert that "there are no allegations or evidence as to whether or when any of the Plaintiffs" "received or read" the projection statements. Pls. Br. 17, 32-33, 35-36. But Plaintiffs' own allegations reveal that they "received [and] read" those statements and acted "in response" to them more than three years before they joined this suit. *Supra* pp. 9-10, 17-19. In addition, the SPD disclosed Defendants' use of the UP-1984 mortality table, and Plaintiffs received purportedly miscalculated benefits, outside the limitations period. S*upra* pp. 10, 20-21. Literally every piece of "circumstantial evidence" from which actual knowledge can be permissibly inferred (according to the Supreme Court) supports the inference here. *Intel*, 589 U.S. at 189.

38

*Intel* ***Does Not Preclude Dismissal.*** For this reason, Plaintiffs and their Amicus are wrong to argue that the Supreme Court's decision in *Intel* forecloses the holding that Plaintiffs had actual knowledge as a matter of law. *E.g.*, Pls. Br. 1, 30, 33-35; DOL Amicus Br. 12-13. *Intel* preserved all the "usual ways" to show actual knowledge, including "inference[s] from circumstantial evidence" "at any stage in the litigation." 589 U.S. at 189. Again, Plaintiffs *allege* their reliance on—and therefore their awareness of—the information in the projection statements. *Supra* pp. 17-18.

***Plaintiffs Actually Learned from the Disclosures.*** Plaintiffs' further claim that there is "no evidence" as to what they "*actually* learned" from the disclosures. Pls. Br. 35-36. But once more, Plaintiffs' allegations say otherwise: they understood the projection statements to "calculate[] the value of [their] benefits using the Plan's … actuarial assumptions," including the UP-1984 mortality table. A63 ¶¶ 97-98. That, of course, is *the* "material fact" on which their claims are based. *Supra* pp. 17-19.

Plaintiffs' assertion that they somehow had to "appreciate" that the use of this table was "wrongful," Pls. Br. 33, once again conflates the material facts underlying their claims with their legal theory. *Supra* pp. 21-24. Plaintiffs did not need "expert" advice or a "sophisticated understanding of complex actuarial calculations" to appreciate that the Plan employed the UP-1984 mortality table. *Contra* Pls. Br. 27-

28, 32-32, 36-37. They just needed to read the projection statements, which they admit they did. *Supra* pp. 17-18. Whether use of that table was "wrongful" goes to the overarching *legal question* of this case. And as Plaintiffs admit, the actual knowledge standard does not require a plaintiff to "have knowledge of the relevant law" or to "understand ERISA." Pls. Br. 25, 27.

***The District Court Applied the Correct Standard.*** Finally, Plaintiffs distort the district court's opinion, saying the court "entirely misunderstood" the actual-knowledge standard and "failed to recognize" that the limitations period depends on their subjective awareness. Pls. Br. 17, 29; *see also id.* at 19-20. But as Plaintiffs ultimately concede, the court correctly stated the relevant standard. *Id.* at 30. The court further recognized it could "reasonably infer" actual knowledge, and drew that inference based on the Amended Complaint and the materials incorporated into it. SA9-10 (quoting *Masten*, 543 F. Supp. 3d at 38). Far from a "blind reliance" on *Masten*, Pls. Br. 20, the court's analysis accords with the inferences *Intel* contemplated—the same kind of inferences this Court has previously affirmed at the pleading stage. *See Muehlgay*, 649 F. App'x at 111. Those inferences, coupled with Plaintiffs' own allegations and admissions, should lead to the same result here.[8]

---

[8] At a minimum, Plaintiff Knight's fiduciary claim should be dismissed, as it is untimely even under ERISA's six-year standard for claims that do not involve actual knowledge. *See* 29 U.S.C. § 1113; Mot., D.Ct. Dkt. 47 at 11; *supra* pp. 10, 16-21.

## III.   IN ANY EVENT, PLAINTIFFS FAIL TO ALLEGE A FIDUCIARY BREACH.

Even assuming Plaintiffs' fiduciary claim was timely, this Court should nonetheless affirm its dismissal.  According to Plaintiffs, the Committee breached its fiduciary duties by: (i) failing to amend and "update" the Plan's purportedly "outdated [actuarial] assumptions"; (ii) "applying" those same assumptions "when calculating Plaintiffs' joint and survivor annuities," and (iii) "falsely telling Plaintiffs that the joint and survivor annuities paid by the Plan were actuarially equivalent to the single life annuity available to them."  Pls. Br. 31 (citing A73-74).  None of these allegations—which do little more than improperly repackage Plaintiffs' statutory claims—states a claim for breach of a fiduciary duty.

### A.   The Committee Had No Duty To Update the Plan's Method for Calculating Benefits

Plaintiffs first fault the Committee for failing to "updat[e]" the Plan's purportedly outdated actuarial assumptions.  A74 ¶ 151.F; Pls. Br. 31.  But under black-letter law, the purported failure to update these assumptions cannot constitute the breach of a fiduciary duty.  Indeed, it does not even implicate fiduciary conduct.

ERISA's fiduciary duties apply only when an entity is "performing a fiduciary function."  *Pegram*, 530 U.S. at 226.  Thus, "[i]n every case charging breach of ERISA fiduciary duty," the "threshold question" is whether the defendant was "acting as a fiduciary" or a settlor "when taking the action subject to complaint."

*Id.*; *supra* pp. 4-5. As relevant here, a party acts as a fiduciary only "to the extent" it "exercises any discretionary authority or discretionary control respecting management of [a] plan" or "has any discretionary authority or discretionary responsibility in the administration of [the] plan." 29 U.S.C. § 1002(21)(A).

A party does not act as a fiduciary, however, where it "'makes a decision regarding the form or structure of the [p]lan.'" *Massaro v. Palladino*, 19 F.4th 197, 212 (2d Cir. 2021) (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999)). Rather, when making decisions regarding plan design or amendment, a "plan administrator acts as a 'settlor,'" not a fiduciary. *Id.* This remains true even when the same entity has both a fiduciary role and the express power to amend the plan: a party may wear "two hats," but it cannot wear both at the same time. *Id.* at 211-12 (quoting *Pegram*, 530 U.S. at 225)). Therefore, "ERISA's fiduciary duty requirement simply is not implicated" by decisions regarding the structure of a plan, such as "who is entitled to receive Plan benefits and in what amounts, or *how such benefits are calculated.*" *Hughes Aircraft*, 525 U.S. at 444 (emphasis added); *see also Janese*, 692 F.3d at 227 (finding claims "subject to dismissal because the Defendants were not acting as fiduciaries when they amended the plans"); *Belade v. ITT Corp.*, 909 F.2d 736, 738 (2d Cir. 1990) (same for plan "design"); *Sutter v. BASF Corp.*, 964 F.2d 556, 561-62 (6th Cir. 1992) (finding no fiduciary breach from "decision not to amend the [p]lan").

Here, of course, the Plan Document provides that a single life annuity will be converted into a joint and survivor annuity using "the UP-1984 Mortality Table." A57 ¶ 64; A259 § A-4.2(e). Because this methodology governs "how … benefits are calculated" under the Plan, *Hughes Aircraft*, 525 U.S. at 444, Plaintiffs' demand that it be updated involves settlor, not fiduciary, functions. Accordingly, "ERISA's fiduciary duty requirement simply is not implicated." *Id.*

In fact, federal law is clear that the actuarial assumptions set forth in a plan document can only be changed via an amendment to the plan. The tax code requires tax-qualified plans (like the Plan here) to specify the "actuarial assumptions" used to calculate benefits "in a way which precludes employer"—and fiduciary— "discretion." 26 U.S.C. § 401(a)(25); Rev. Rul. 79-90, 1979-1 C.B. 155 (explaining that "employer discretion" includes "discretion of the employer, plan administrator, fiduciary, actuary, etc."); *see also* 29 U.S.C. § 1102(b)(4) (stating that an ERISA plan must "specify the basis on which payments are made"). Consequently, fiduciaries are not free to ignore the actuarial assumptions detailed in a plan; the tax code mandates this specificity precisely to prevent the plan's methodology from being changed without amendment. *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1119 (9th Cir. 2000). And because "the act of amending a pension plan does not trigger ERISA's fiduciary provisions," *Lockheed*, 517 U.S. at 882, the purported

failure to update the Plan's actuarial assumptions cannot form the basis for a claim of fiduciary breach.

### B. The Committee Had No Duty To Deviate from the Terms of the Plan in Calculating Benefits

Perhaps recognizing that amending a plan is not a fiduciary function, Plaintiffs fault the Committee for "appl[ying]" or "using" the Plan's purportedly outdated assumptions to "determin[e]" Plaintiffs' benefits without ensuring they complied with ERISA's actuarial equivalence requirements. A73-74 ¶ 151.A, B, D, F; Pls. Br. 31. But like the decision to amend a plan, the rote application of plan terms to calculate benefits does not involve fiduciary conduct. Regardless, ERISA imposes no freestanding duty to deviate from purportedly unlawful plan terms.

*No Fiduciary Conduct.* Just as it differentiates between settlor and fiduciary functions, ERISA distinguishes between fiduciary and so-called "ministerial" duties. "[T]he existence of discretion [is the] sine qua non" of the former. *Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir. 1992). Thus, when a plan administrator acts "'within a framework of policies, interpretations, rules, practices and procedures made by other persons,'" he is not acting as a fiduciary. *Livick v. Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008) (quoting 29 C.F.R. § 2509.75-8(D-2)). Instead, he is performing "'purely ministerial functions,'" which are not subject to ERISA's fiduciary standards. *Geller v. Cnty. Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir. 1996) (citation omitted); *see also Roe v. Empire Blue Cross Blue Shield*,

No. 12-CV-04788, 2014 WL 1760343, at *8 (S.D.N.Y. May 1, 2014) (explaining that a plan administrator does not breach fiduciary duties merely by "presiding over a plan," even if that plan "fails in some respect to conform" with ERISA), *aff'd,* 589 F. App'x 8 (2d Cir. 2014).

That is the conduct Plaintiffs challenge here. Specifically, "the action subject to complaint," *Pegram*, 530 U.S. at 226, is the "application" or "us[e]" of the Plan's actuarial assumptions to calculate Plaintiffs' joint and survivor annuities. A73-74 ¶ 151. That does not involve the exercise of discretion, but rather the application of "rules" set by "other persons" (here, the plan sponsor). 29 C.F.R. § 2509.75-8(D-2). In fact, the Department of Labor considers the "[c]alculation of benefits" to be the epitome of a "purely ministerial function." *Id.* Accordingly, such conduct cannot provide grounds for a fiduciary breach claim.

Presumably to inject some discretion into an otherwise ministerial task, Plaintiffs allege that the Committee enjoyed broad authority under the Plan to "'determine whether one form of income under the Plan is the Actuarial Equivalent of another form'" and to "'incorporate changes required by law.'" A52 ¶ 38. Neither of these powers, however, involves the exercise of fiduciary responsibility. Under the Plan, "Actuarial Equivalent" is a defined term, and the power to determine if two forms of a benefit are "Actuarial Equivalent[s]" is merely the power to apply the Plan's stated actuarial assumptions. A259 § A-4.2(e). As for the ability to

"incorporate changes required by law," that is at most the power to amend the Plan. And for all the reasons detailed above, amending a plan is inherently non-fiduciary—even when performed by an entity (like the Committee) that at times wears a fiduciary "hat." *Supra* pp. 5, 41-43.

**No Duty to Deviate.** Even if the Committee's alleged benefit calculation were somehow fiduciary in nature (and it is not), Plaintiffs would still be unable to state a claim for fiduciary breach. Plaintiffs' claim is premised on the notion that the Committee had a duty to deviate from the Plan's express terms to calculate Plaintiffs' annuities using different mortality tables. *E.g.*, A73 ¶ 151.D. But no such duty exists.

As an initial matter, a duty to deviate cannot be derived from the provisions that form the basis for Plaintiffs' statutory claims. By their terms, those provisions govern the *structure* of a "pension plan." *See* 29 U.S.C. § 1053(a) ("Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable …."); *id.* § 1054(a) ("Each pension plan shall satisfy [specified] requirements" related to accrued benefits.); *id.* § 1055 ("Each pension plan to which this section applies shall provide" certain joint and survivor options.). They thus impose duties on *plan sponsors* who design plans, not fiduciaries (like the Committee) who administer them. *Supra* pp. 4-5, 41-43. As a result, the mere fact that the Plan (allegedly) violates these statutes "does not trigger ERISA's fiduciary

46

provisions." *Lockheed*, 517 U.S. at 891; *Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*, 387 F. Supp. 2d 175, 185 (E.D.N.Y. 2005) (explaining that "the proper inquiry is not whether the plan violated ERISA, but rather whether the Trustees, while acting in a fiduciary capacity, violated any of ERISA's enumerated fiduciary duties"), *aff'd*, 199 F. App'x 29 (2d Cir. 2006).

To be sure, Plaintiffs invoke actual fiduciary obligations in support of their purported duty to deviate. None, however, required the Committee to stray from the Plan's stated method of calculating benefits. A73 ¶ 151. For example, Plaintiffs allege that the Committee is liable for "[f]ollowing Plan terms that violate ERISA." A74 ¶ 151.F. But while fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as [they] are consistent" with ERISA, *see* 29 U.S.C. § 1104(a)(1)(D), this obligation in no way requires them to *deviate* from the plan if they conclude that it violates the law. "As a matter of logic, the latter simply does not follow from the former." *Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-CV-541, 2022 WL 407238, at *5-7 (S.D. Ohio Feb. 10, 2022). Accordingly, the "weight of … authority" has recognized that there is no "fiduciary duty *not to follow* plan documents that are *not consistent* with ERISA." *Id.*[9]

---

[9] *See Hamrick v. E.I. du Pont de Nemours & Co.*, No. CV 23-238-JLH, 2024 WL 359240, at *5-6 (D. Del. Jan. 31, 2024); *Skrtich v. Pinnacle W. Capital Corp.*, No. CV-22-01753-PHX-SMB, 2023 U.S. Dist. LEXIS 136862, at *12-14 (D. Ariz. Aug. 7, 2023); *see also Ulico*, 387 F. Supp. 2d at 185; *Laurent v. PricewaterhouseCoopers LLP*, No. 06-CV-2280, 2018 WL 502239, at *3 (S.D.N.Y. Jan. 19, 2018); *Paul v.*

Likewise, while Plaintiffs cite the duties of loyalty and prudence, A73 ¶ 151(A)-(B), (D) (citing 29 U.S.C. § 1104(a)(1)(A) & (a)(1)(B)), they do not explain how those obligations could compel the Committee to set aside the terms of the Plan. Plaintiffs do not, for example, contend that the Plan impermissibly purports to relieve the Committee of its fiduciary responsibilities. *See* 29 U.S.C. § 1110(a) (declaring such provisions "void as against public policy"). Instead, they maintain only that by using the Plan's allegedly outdated mortality tables to perform the (inherently ministerial) task of calculating benefits, the Committee "presid[ed] over a plan" that failed "in some respect to conform to one of ERISA's myriad provisions." *Roe*, 2014 WL 1760343, at *8. As detailed above, that is not enough to state a claim for fiduciary breach, *supra* pp. 44-47, particularly where the only

---

*RBC Cap. Mkts. LLC*, No. C16-5616, 2018 WL 3630290, at *7 (W.D. Wash. July 31, 2018); *Roe*, 2014 WL 1760343, at *8.

In dicta, this Court has stated that § 1104(a)(1)(D) "impose[s] a general fiduciary duty to comply with ERISA." *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 131 (2d Cir. 2015) (quoting *Kendall v. Emps. Ret. Plan of Avon Products*, 561 F.3d 112, 120 (2d Cir. 2009)). Neither case, however, required this Court to decide whether a fiduciary must abandon the plan's terms: *New York State Psychiatric Association* involved claims that the plan administrator had "breached the terms of the … Plan," *id.*, while *Kendall* involved only a plaintiff's standing to sue, *Kendall*, 561 F.3d at 120-21. Unsurprisingly, therefore, district courts have declined to read these cases as creating a freestanding fiduciary duty to deviate from allegedly unlawful plan terms. *Laurent*, 2018 WL 502239, at *3; *Macy's*, 2022 WL 407238, at *10. This is all the more so here, where deviating from plan terms would run afoul of the tax code. *See* 26 U.S.C. § 401(a)(25); *supra* pp. 6, 43.

way to remedy the purported illegality—amending the plan—involves non-fiduciary conduct, *supra* pp. 4-5, 41-44.

The practical implications of Plaintiffs' proposed "duty to deviate" further demonstrate that their theory cannot be right. Plaintiffs would require plan fiduciaries to second guess every aspect of every participants' benefits calculation to ensure it remains legally and actuarially sound. This would force fiduciaries to make difficult judgment calls in the face of legal uncertainty and to regularly consult with lawyers and actuaries, dramatically increasing the expense and complexity of providing benefits. *See Bell v. Pfizer, Inc.*, 626 F.3d 66, 78 (2d Cir. 2010) (declining to create a fiduciary duty that would impose enormous burdens on ERISA fiduciaries). This result flies in the face of Congress' efforts to avoid creating "a system that is … so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." *Conkright*, 559 U.S. at 517. It also violates the Supreme Court's admonition that courts develop rules that promote reliance on the written plan's terms, as this promotes "simple administration, avoid[s] double liability, and ensur[es] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 301 (2009).

**C.      The Committee Did Not Misrepresent the Benefits Available to Plaintiffs.**

Finally, Plaintiffs resort to conclusory allegations that the Committee gave them "inaccurate and misleading information" regarding their joint and survivor annuities.   A73 ¶ 151(C); *see also* A62 ¶¶ 93-96.   But the disclosures at issue—Plaintiffs' projection statements, *see* Pls' Opp. Br., D.Ct. Dkt. 49 at 23—were clear, complete, and accurate, *see In re DeRogatis*, 904 F.3d 174, 193-95 (2d Cir. 2018). Far from misleading, the projection statements disclosed the actuarial assumptions used to determine Plaintiffs' benefits; identified other assumptions used for other calculations; and highlighted that the use of different assumptions could have a "material impact" on the value of any benefit.   A658, 696, 742.

Plaintiffs do not allege that any of this information was false or misleading. Rather, they claim that the projection statements inaccurately described Plaintiffs' joint and survivor annuities as the "actuarial equivalent" of the single-life annuity to which they were entitled.   A73 ¶ 151(C).   But under the Plan's definitions, those statements were undeniably accurate.  *Supra* p. 45.   Indeed, the Committee may well have been accused of misrepresentation if it applied anything other than the Plan's assumptions when projecting a participant's "benefits payable *from the Plan*." A651, 687, 733 (emphasis added).   In any event, because the projection statements "contained all the information necessary for [Plaintiffs] to ascertain their rights

50

regarding pension and survivor benefits," there was no breach of fiduciary duty here.

*In re DeRogatis*, 904 F.3d at 195.

## CONCLUSION

For these reasons, the Court should affirm the decision below.


Dated:  November 18, 2024

Respectfully submitted,

Robert S. Newman
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5125

*/s/ Traci L. Lovitt*
Traci L. Lovitt
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939

David T. Raimer
Caleb P. Redmond
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: (202) 879-3939


*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook Standard font.

This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(A) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), it contains 12,001 words, as determined by the word-count function of Microsoft Word 2016.

Dated: November 18, 2024        /s/ *Traci L. Lovitt*
                                       *Counsel for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I electronically filed the above document with the Clerk of the Court of the United States Court of Appeals for the Second Circuit by using the appellate ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.


Dated: November 18, 2024                    /s/ *Traci L. Lovitt*
                                            *Counsel for Appellees*