# 24-1281

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

JOSHUA KNIGHT, MICHAEL CAMPBELL, and ERNEST
FABRIZIO, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, THE
PLAN ADMINISTRATOR COMMITTEE, and THE IBM
PERSONAL PENSION PLAN

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of New York
Hon. Nelson Stephen Roman, No. 7:22-cv-04592-NSR

## REPLY BRIEF OF APPELLANTS

Peter K. Stris
Rachana Pathak
STRIS & MAHER LLP
777 South Figueroa Street, Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800|
Fax: (213) 261-0299
pstris@stris.com
rpathak@stris.com

Colleen R. Smith
STRIS & MAHER LLP
1717 K Street NW Suite 900
Washington, DC 20006
Telephone: (202) 800-5749
Facsimile: (213) 261-0299
csmith@stris.com

*Counsel for Plaintiffs-Appellants (additional counsel listed on inside cover)*

Michelle C. Yau
COHEN MILSTEIN SELLERS &
TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com

Jacob Schutz
COHEN MILSTEIN SELLERS &
TOLL PLLC
400 South 4th St., Ste. 401-28
Minneapolis, MN 55415
Telephone: (612) 807-1575
jschutz@cohenmilstein.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................1

ARGUMENT ...................................................................................2

I.     The district court clearly erred in dismissing Plaintiffs' fiduciary breach claim as untimely. ...................................................................2

     A.    Defendants' repeated assertion that Plaintiffs "admit" that they received, read, and took action in response to the Pension Projection Statements is wrong. ..............................................2

     B.    Actual knowledge cannot be "inferred" in this case. ............7

II.    The Court should reject Defendants' alternative argument for affirmance. .................................................................................9

     A.    The Court should not address Defendants' alternative argument for affirmance. ..............................................................9

     B.    In any event, Plaintiffs have stated a claim for fiduciary breach. ........11

III.   The district court also erred in dismissing Plaintiffs' statutory claims as untimely. .................................................................................16

     A.    Plaintiffs' claims accrued when they knew or should have known of their injury. ..............................................................17

     B.    There are numerous disputes of fact as to when Plaintiffs knew or should have known of their claims. ................................23

     C.    The district court should not have considered the Pension Projection Statements. ..........................................................26

CONCLUSION ...............................................................................27

CERTIFICATE OF COMPLIANCE .......................................................29

CERTIFICATE OF SERVICE .............................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.,*
11 F.4th 138 (2d Cir. 2021) ...................................................................10

*Caputo v. Pfizer, Inc.,*
267 F.3d 181 (2d Cir. 2001) ...................................................................4

*Chasteen v. UNISIA JECS Corp.,*
216 F.3d 1212 (10th Cir. 2000) ............................................................23

*CIGNA Corp. v. Amara,*
563 U.S. 421 (2011) ........................................................................22, 27

*Clarke v. Pilkington N. Am., Inc.,*
2022 WL 4483817 (E.D. Mich. Sept. 27, 2022) ....................................7

*Corcoran v. New York Power Auth.,*
202 F.3d 530 (2d Cir. 1999) .................................................................20

*Cuomo v. Crane Co.,*
771 F.3d 113 (2d Cir. 2014) .................................................................10

*Valdez ex rel. Donely v. United States,*
518 F.3d 173 (2d Cir. 2008) .................................................................20

*Drazan v. United States,*
762 F.2d 56 (7th Cir. 1985) ..................................................................20

*Gluck v. Unisys Corp.,*
960 F.2d 1168 (3d Cir. 1992) ..........................................................4, 8, 9

*Guo v. IBM 401(k) Plus Plan,*
95 F. Supp. 3d 512 (S.D.N.Y. 2015) ......................................................6

*Hertz v. United States,*
560 F.3d 616 (6th Cir. 2009) ................................................................21

*Hormel v. Helvering,*
312 U.S. 552 (1941) .........................................................................10, 11

ii

*IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*,
2015 WL 1516631 (S.D.N.Y. Mar. 26, 2015).......................................23

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
589 U.S. 178 (2020)........................................................................4, 7

*Kendall v. Emps. Ret. Plan of Avon Prod.*,
561 F.3d 112 (2d Cir. 2009) ..............................................................14

*Koch v. Christie's Int'l PLC*,
699 F.3d 141 (2d Cir. 2012) ..............................................................25

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998) ..............................................................17

*Lalonde v. Massachusetts Mut. Ins. Co.*,
728 F. Supp. 3d 141 (D. Mass 2024) ...................................................6

*LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*,
318 F.3d 148 (2d Cir. 2003) ..............................................................25

*Meagher v. International Association of Machinists & Aerospace
Workers Pension Plan*,
856 F.2d 1418 (9th Cir. 1988) .............................................................8

*Moses v. Revlon Inc.*,
691 F. App'x 16 (2d Cir. 2017) .........................................................25

*Nat'l Org. for Marriage, Inc. v. Walsh*,
714 F.3d 682 (2d Cir. 2013) ........................................................10, 11

*New York State Psychiatric Ass'n, Inc., v. UnitedHealth Group*,
798 F.3d 125 (2d Cir. 2015) ..............................................................14

*Novella v. Westchester Cnty.*,
661 F.3d 128 (2d Cir. 2011) ..............................................................19

*Oechsner v. Connell Ltd. P'ship*,
283 F. Supp. 2d 926 (S.D.N.Y. 2003) ..................................................6

*Rotella v. Wood*,
528 U.S. 549 (2000)..........................................................................18

iii

*Singleton v. Wulff,*
428 U.S. 106 (1976)................................................................10

*Smith v. Aetna,*
2024 WL 760162 (D. Colo. Jan. 26, 2024) ...........................7

*Staehr v. Hartford Fin. Servs. Grp., Inc.,*
547 F.3d 406 (2d Cir. 2008) .................................................27

*Sullivan-Mestecky v. Verizon Commc'ns Inc.,*
961 F.3d 91 (2d Cir. 2020) ...................................................12

*Thompson v. Ret. Plan for Emps. Of S.C. Johnson & Sons, Inc.,*
716 F. Supp. 2d 752 (E.D. Wis. 2010) .................................22

*Tibble v. Edison International,*
575 U.S. 523 (2015).............................................................15

*United States v. The Baylor Univ. Med. Ctr.,*
469 F.3d 263 (2d Cir. 2006) .................................................25

*United States v. Inc. Vill. of Island Park,*
791 F. Supp. 354 (E.D.N.Y. 1992) .......................................23

*United States v. Kubrick,*
444 U.S. 111 (1979)........................................................17, 20

*Young v. Verizon's Bell Atl. Cash Balance Plan,*
615 F.3d 808 (7th Cir. 2010) ...........................................19, 22

*Ziegler v. Connecticut Gen. Life Ins. Co.,*
916 F.2d 548 (9th Cir. 1990) .................................................4

*Zivotofsky ex rel. Zivotofsky v. Clinton,*
566 U.S. 189 (2012)........................................................10, 11

**Statutes**

26 U.S.C. § 401(a)(25)........................................................14

29 U.S.C. § 1002(21)(A)(iii).................................................14

29 U.S.C. § 1104(a)(1)(D)....................................................14

iv

**Other Authorities**

Restatement (Third) of Trusts § 72 (2007) .............................................................16

## INTRODUCTION

The district court's dismissal of Plaintiffs' Amended Complaint should be reversed in its entirety. None of Defendants' three responses withstands scrutiny.

1. First, the district court clearly erred in dismissing Plaintiffs' fiduciary claims as time-barred. As explained in Section I.A. below, Defendants primarily attempt to avoid reversal by manufacturing actual knowledge through the repeated assertion that Plaintiffs "admit" that they received, read, and took action in response to the Pension Projection Statements. But that assertion is demonstrably false. And as explained in Section II.B., Defendants' fallback attempt to defend the district court's holding fares no better because actual knowledge cannot be inferred from circumstantial evidence in this case.

2. Faced with the reality that Plaintiffs' fiduciary claims are clearly timely, Defendants spend ten pages of their brief urging affirmance on alternative grounds— i.e., that Plaintiffs have failed to state a claim for fiduciary breach. As explained in Section II.A., the Court should decline to reach Defendants' alternative argument— which should be considered by the district court in the first instance. But in any case, as explained in Section II.B, Defendants' position is wrong on the merits—which is probably why the district court ignored it entirely.

3. Finally, the district court also erred in dismissing Plaintiffs' statutory claims as time-barred. As explained in Section III.A., the case law is clear that

Plaintiffs' statutory claims did not accrue until they knew or should have known of their *injuries*—not simply what actuarial assumptions Defendants might use to calculate their benefits. And as explained in Sections III.B. and C., this case is replete with questions of fact as to when Plaintiffs should have known of their injuries that can't be answered through the improper review of documents outside of the Amended Complaint. Those evidentiary gaps demand reversal.

## ARGUMENT

### I.    The district court clearly erred in dismissing Plaintiffs' fiduciary breach claim as untimely.

Defendants' response presents a scattershot of assertions on the timeliness of Plaintiffs' fiduciary breach claim that barely engages with the core of Plaintiffs' arguments. Two main defenses can be discerned from Defendants' brief: (A) Defendants repeatedly assert that Plaintiffs "admit" that they read and received the Pension Projection Statements; and (B) Defendants contend that Plaintiffs' "actual knowledge" can be inferred from other circumstantial evidence. Neither of these assertions is accurate.

### A.    Defendants' repeated assertion that Plaintiffs "admit" that they received, read, and took action in response to the Pension Projection Statements is wrong.

Defendants hang their defense on the conclusory assertion that "Plaintiffs *admit* that they received, 'read,' and 'took action in response' to the 'relevant disclosures' outside the limitations period." *See* Resp. at 37; *see also id.* at 40 ("They

just needed to read the projection statements, which they admit they did."). This assertion is not supported by the record.

To support their misleading and conclusory assertion, Defendants repeatedly point to the following three paragraphs in Plaintiffs' Amended Complaint:

> 96.    When deciding if and when to retire, and what form of benefit to elect, Plaintiffs and the Class relied upon the accuracy and sufficiency of information provided to them by Defendants to plan for retirement.

> 97.    Defendants provided information to Class members concerning the amount of retirement benefits they would receive under various forms of retirement benefit.

> 98.    When communicating to Plaintiffs and the Class, Defendants failed to use "a single set of interest and mortality assumptions that are reasonable," and instead calculated the value of benefits using the Plan's outdated and unreasonable actuarial assumptions for calculating joint and survivor annuities.

*See* Resp. at 36–37; *see also id.* at 11, 17–19, 39.

These three paragraphs contain no "admission" by Plaintiffs that they had actual knowledge of the material facts that Plaintiffs would need to know to trigger the three-year statute of limitations. This is true even if the Court assumes that Plaintiffs received and read some part of the Pension Statements. Paragraphs 96–98 do not state, for example, that any Plaintiff reviewed the convoluted "Calculation Notes" that mention the UP-1984 mortality table. Nor do these paragraphs state that any Plaintiff understood from reading those Notes that Defendants would actually use the UP-1984 mortality table to calculate their joint and survivor annuities.

3

Finally, these paragraphs do not say that any Plaintiff understood that use of the UP-1984 mortality table would injure them.

At best, these paragraphs generally allege that Defendants provided some information to Plaintiffs and Class members about their pension benefits—as Defendants are required to do by law. But, as the Supreme Court made clear in *Sulyma*, disclosure alone is not enough to establish a plaintiff's actual knowledge. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 186 (2020) (Section "1113(2) requires more than evidence of disclosure alone."). The Court should not credit Defendants' inaccurate, amplifying language that claims the record contains more than evidence of disclosure.

Defendants also contend that the only fact Plaintiffs needed to know to gain actual knowledge of their fiduciary breach claim is that Defendants used the UP-1984 mortality table to calculate Plaintiffs' pension benefits. *See* Resp. at 39–40. There is simply no evidence that any Plaintiff actually learned this fact more than three years prior to bringing suit. But even if they had, that fact alone is not enough to give Plaintiffs actual knowledge. Instead, Plaintiffs needed to have knowledge of the "harmful consequences" of the use of that mortality table. *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001); *see also Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992); *Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548 (9th Cir. 1990); Open. Br. at 27–28.

4

Knowledge of the harmful consequences is particularly important here because—as the parties agree—Defendants' use of the UP-1984 mortality table alone does not violate ERISA. ERISA does not dictate what mortality table Defendants must use. Open. Br. at 7–8. Rather, Defendants violated ERISA when their use of that mortality table resulted in Plaintiffs receiving joint and survivor annuity benefits that were not actuarially equivalent to the single life annuity to which they were entitled. *Id.* at 8, 9. Accordingly, Plaintiffs needed to know that they were receiving smaller benefits than they were entitled to before they could have actual knowledge of their fiduciary breach claim. And given the complicated calculations at play—a fact Defendants do not contest—Plaintiffs needed the "opinions of experts" before they could understand that they were harmed. *Id.* at 27–28.

Plaintiffs do not contend that actual knowledge of a fiduciary breach can never be found at the motion to dismiss stage. However, it is not appropriate in this case, and the cases Defendants cite (Resp. at 35–36) are readily distinguishable because the complaints contained substantial, blatant descriptions of actual knowledge that supported dismissal, or the plaintiffs did not even contest actual knowledge. For example, in *In re Citigroup Erisa Litigation*, "the plaintiffs use[d] about *seven single-spaced pages* of their Complaint to allege the very public 'red flags' that were specific to Citigroup and that demonstrated its dire financial situation" more than

three years before plaintiffs filed their fiduciary breach claims. 104 F. Supp. 3d 599, 610 (S.D.N.Y. 2015), *aff'd sub nom. Muehlgay v. Citigroup Inc.*, 649 F. App'x 110 (2d Cir. 2016) (emphasis added). Plaintiffs didn't claim they hadn't seen the public information; only that they "were unable to understand" it. 649 F. App'x at 111. However, that argument was at odds with allegations in the complaint that "the imprudence of investing in Citigroup stock could 'be gleaned even from a cursory review of the omnipresent news stories.'" *Id.* The pleadings here contain no such detailed allegations of substantial public disclosure and no admissions that the plaintiffs saw the information or that it was easily understood.[1] And in *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 529 (S.D.N.Y. 2015), unlike here, the plaintiff did not contest that a letter she received from defendants, and identified in her complaint, gave her actual knowledge. *Id.* Instead, she only contended that equitable tolling should apply. *Id.*[2]

---

[1] It is less clear what knowledge the plaintiffs had in *Oechsner v. Connell Ltd. P'ship*, 283 F. Supp. 2d 926, 932 (S.D.N.Y. 2003), *aff'd,* 101 F. App'x 849 (2d Cir. 2004). But it is clear that the plaintiffs had the terms of two different ERISA plans, and received benefits under the new plan for *fifteen years* before filing suit and claiming the benefits under the new plan were not similar to or better that the old plan, as they had been told by Defendants. *Id.*

[2] Defendants' out-of-circuit caselaw is also readily distinguishable on similar grounds. *Lalonde v. Massachusetts Mut. Ins. Co.*, 728 F. Supp. 3d 141, 151 (D. Mass 2024) ("[T]he complaint expressly alleges the proprietary funds were part of the plan as far back as 2016 and Plaintiff knew this to be true because she had money invested in these proprietary funds. In addition, Plaintiff's complaint contains an entire

## B.  Actual knowledge cannot be "inferred" in this case.

Defendants next contend that Plaintiffs' actual knowledge can be inferred from two pieces of "circumstantial evidence." Resp. at 37–38. Defendants first assert they "'disclosed' the use of the UP-1984 table in the SPD" and made the SPD available to Plaintiffs. Resp. at 37. That is not enough. Again, *Sulyma* made abundantly clear that "§ 1113(2) requires more than evidence of disclosure alone." 589 U.S. at 186. Defendants must show that Plaintiffs actually received, read, and understood the *relevant* portions of the SPD.[3] They have not made that showing. Actual knowledge thus cannot be inferred from the SPD.

Second, Defendants assert actual knowledge may be inferred from Plaintiffs' receipt of benefits payments. Resp. at 37. As explained in Plaintiffs' opening brief, that argument is wrong. Open. Br. at 34–35. Plaintiffs' receipt of their pension payments did not inform Plaintiffs of how their benefits were calculated or the

---

section devoted to listing facts of which she was unaware. Yet, this section does not allege a lack of awareness regarding the plan's use of proprietary funds"); *Smith v. Aetna*, 2024 WL 760162, at *6 (D. Colo. Jan. 26, 2024) (plaintiff asserted defendants' denial of his claim in 2012 was a breach of fiduciary duties, but because plaintiff knew his claim was denied in 2012 he also knew of the fiduciary breach in 2012); *Clarke v. Pilkington N. Am., Inc.*, 2022 WL 4483817, at *1 (E.D. Mich. Sept. 27, 2022) (complaint alleged 13 years before filing suit, plaintiff "'received a notification' that her 401(k) account had been completely depleted and . . . sent to her ex-husband"; plaintiff did not contest actual knowledge, but asserted there was a continuing violation or equitable tolling should apply).

[3] Plaintiffs maintain that it is not appropriate to consider the SPD at this stage. *See infra* Part III.C.; Open. Br. at 56 n.12; *id.* 50-57.

harmful consequences of those calculations. *Id.* Defendants have not explained how the pension payments gave Plaintiffs knowledge of anything except for the fact that their payments had commenced. The pension payment thus did not inform Plaintiffs of any of the material facts that form the basis of their fiduciary breach claim.

Defendants again cite *Masten* to support their argument. As previously explained, *Masten* did not apply the correct "actual knowledge" standard and was therefore wrongly decided. *Id.* at 29–30, 34. And the other cases Defendants cite (Resp. 37–38) are distinguishable or inapposite. In *Meagher v. International Association of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1423 (9th Cir. 1988)—a pre-*Sulyma* case—the plaintiff's monthly pension benefits were "reduced" when the defendant implemented an "amendment" to the pension plan and were never increased, even after a court declared the amendment was "inoperative" in a different case. The initial change in the plaintiff's monthly pension check gave him notice that the defendant had implemented the "inoperative amendment," and subsequent payments gave him monthly notice that the defendant had never rescinded the amendment. *Id.* Unlike in *Meagher*, here, there was never a change in the amount Plaintiffs received each month that would have tipped Plaintiffs off that a breach had occurred or was still occurring.[4]

---

[4] Defendants' parallel citation (Resp. at 38) to *Gluck v. Unisys Corp.,* 960 F .2d at 1177, is confusing. *Gluck* does not support Defendants' position at all. Instead, *Gluck*

Defendants have thus not identified any "circumstantial evidence" from which Plaintiffs' actual knowledge can be inferred. When exactly Plaintiffs obtained actual knowledge can only be determined through discovery. Accordingly, this Court should reverse and remand to allow that discovery to occur.

## II. The Court should reject Defendants' alternative argument for affirmance.

Faced with the reality that Plaintiffs' fiduciary breach claim is timely, Defendants spend ten pages arguing the district court's dismissal of that claim should be affirmed on alternative grounds. As explained below, the Court should not reach this argument. But if it does, the Court should reject it on the merits.

### A. The Court should not address Defendants' alternative argument for affirmance.

Below, Defendants moved to dismiss Plaintiffs' fiduciary claims on three grounds: (1) untimeliness, (2) failure to state a claim, and (3) failure to exhaust their

---

demonstrates how "rigorous" the "'actual knowledge' requirement of section 1113" is. *Id.* The *Gluck* court reversed the district court's conclusion that plaintiffs' "knowledge of the changes to the plan" automatically gave plaintiffs actual knowledge of the fiduciary breach implicit in those changes. *Id.* at 1179. In doing so, *Gluck* also made clear that under "section 1113's actual knowledge standard" courts should not infer that plaintiffs have reviewed and have knowledge of "the plan document" or "the plan's balance sheet." *Id.* Thus, *Gluck* supports *Plaintiffs'* position that the actual knowledge standard requires clear evidence that Plaintiffs knew about the fiduciary breach at issue, not just evidence that Plaintiffs had access to a document or received benefits under the Plan.

claims. The district court accepted Defendants' untimeliness argument (wrongly, as discussed above). The court did not, however, reach the other arguments.

If this Court agrees that the district court erred in dismissing the fiduciary claims as untimely, it should not address Defendants' alternative argument that Plaintiffs fail to state a fiduciary breach claim. Instead, it should follow the general practice of reversing and remanding "to the lower courts to consider the merits in the first instance." *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 201–02 (2012) (noting that when an appellate court "reverse[s] on a threshold question, [it] typically remand[s] for resolution of any claims the lower courts' error prevented them from addressing").

"It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)); *see also Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 11 F.4th 138, 143 (2d Cir. 2021) (citation omitted) (remanding for district court to consider additional arguments "in the first instance"); *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 692 (2d Cir. 2013) (similar) ("[O]urs is not a court of first review."); *Cuomo v. Crane Co.*, 771 F.3d 113, 117 n.2 (2d Cir. 2014) (arguments district court did not address below were "not properly before" court of appeals).

There are only narrow and rare exceptions to this general rule—such as when an "injustice might otherwise result." *Hormel*, 312 U.S. at 557. None applies here. Defendants have presented "no reason to depart from" this Court's general policy in this case. *Zivotofsky*, 566 U.S. at 201. Indeed, Defendants will suffer no "injustice" if the Court declines to take the argument up now. On the other hand, Plaintiffs have been forced to brief this complex question in a fraction of a reply brief, without the opportunity to comprehensively address the issue.

Defendants also fail to acknowledge that they must succeed on each and every one of the attacks on the Plaintiffs' multiple theories of fiduciary breach in order for this Court to affirm on their alternative argument. If just one of Plaintiffs' theories of fiduciary breach is viable, this Court must remand for further proceedings. And "the cardinal principle of judicial restraint" counsels the Court to decide no more than is "necessary." *Walsh*, 714 F.3d at 692 (citation omitted). So instead of digging into each and every one of the theories of fiduciary breach, the Court should remand for the district court to consider all theories in the first instance.

**B.      In any event, Plaintiffs have stated a claim for fiduciary breach.**

Should the Court reach the merits of Defendants' alternative argument, it should reject it outright and remand for further proceedings because there is no doubt that Plaintiffs have stated a claim for fiduciary breach. As outlined in Plaintiffs'

Amended Complaint, the Plan Administrator Committee ("Committee") has breached its fiduciary duties to Plaintiffs in multiple respects.

**1.** Plaintiffs first allege that the Committee breached its fiduciary duties by providing inaccurate and misleading information to Plaintiffs and the proposed class members about their benefits. A73 (¶ 151(C)). The Committee told them that their joint and survivor annuities would be actuarially equivalent to the single life annuities that were otherwise available to them when, in fact, they were not. *Id.* Plaintiffs have thus pled a textbook fiduciary breach claim based on the failure to provide Plaintiffs with "'complete and accurate information' on [their] benefits." *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 105 (2d Cir. 2020).

Defendants do not contest that the Committee has a fiduciary duty to provide complete and accurate information to Plan participants. And they do not contest that the Committee told Plaintiff that their joint and survivor annuities would be actuarially equivalent to the single life annuities that were otherwise available to them. Instead, Defendants appear to argue (Resp. at 50) that other information—which the Committee provided in the "Calculation Notes" section of the Pension Projection Statements—dropped a trail of breadcrumbs for Plaintiffs that, if followed to the end, would have clarified to Plaintiffs that their joint and survivor annuities were not, in fact, actuarially equivalent to the single life annuities to which they were otherwise entitled. But Defendants cite no legal authority for the

proposition that this trail of confusing breadcrumbs is a complete defense to a fiduciary breach claim based on a plainly inaccurate statement. In addition, determining whether Defendants' argument (that the breadcrumbs provided the necessary clarification) is even true involves scrutinizing documents and answering factual questions that cannot be decided at this stage. In other words, Defendants' arguments do not change the fact that at this early stage (at which the Court is required to construe the allegations in the light most favorable to Plaintiffs), Plaintiffs have stated a fiduciary breach claim based on the Committee's misrepresentations.

**2.** Plaintiffs next allege a fiduciary breach claim based on the Committee's statutory violations. Defendants' argument—that the Committee cannot breach its fiduciary duties by following the Plan Document, even if the Plan violates ERISA— is fatally flawed. Plaintiffs' fiduciary breach claim is supported by the Plan itself, Second Circuit case law, and trust law.

Defendants first fail to acknowledge that the Committee, in addition to being the Plan's "named fiduciary" and "administrator," A52 (¶¶ 35–37), was granted "full authority and discretion" by the Plan "to incorporate changes required by law" and "determine whether one form of income under the Plan is the Actuarial Equivalent of another form of income under the Plan." *Id.* (¶ 38). Under this express grant, the Committee had a fiduciary duty to ensure the Plan's terms complied with ERISA and

to ensure the benefits paid under the Plan complied with the actuarial equivalence requirements. A72–75 (¶¶ 146–57); s*ee also* 29 U.S.C. § 1002(21)(A)(iii) ("a person is a fiduciary with respect to a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan").[5]

In addition, contrary to Defendants' assertions, ERISA fiduciaries are not free to simply ignore the statute's substantive requirements. The Second Circuit has made clear that, through 29 U.S.C. § 1104(a)(1)(D), "[t]he statute . . . impose[s] a general fiduciary duty to comply with ERISA." *Kendall v. Emps. Ret. Plan of Avon Prod.*, 561 F.3d 112, 120 (2d Cir. 2009), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 578 U.S. 118, 127 (2014); 29 U.S.C. § 1104(a)(1)(D) ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]").

In light of this general duty, "[t]here is no serious dispute that [Plaintiffs' fiduciary breach] claims are both adequately and plausibly alleged in the amended complaint." *New York State Psychiatric Ass'n, Inc., v. UnitedHealth Group*, 798 F.3d 125, 131 (2d Cir. 2015). Plaintiffs alleged that by failing to comply with ERISA's

---

[5] Contrary to Defendants' suggestion, *see* Resp. at 43, the Committee is obviously allowed to "incorporate changes required by law," A52 (¶ 38), and may do so without running afoul of 26 U.S.C. § 401(a)(25).

actuarial equivalence requirements—and by applying Plan terms that violate those requirements—the Committee breached its fiduciary duties to Plaintiffs and the class members. That is more than enough. *Id.* (plaintiff alleged that the plan fiduciary violated the Mental Health Parity Act (an amendment to ERISA) and thereby breached fiduciary duties by following plan terms that applied different policies to mental health claims than to medical claims).

Finally, in a similar context, the Supreme Court has recognized a fiduciary's ongoing obligation, under the law of trusts, to ensure that an ERISA plan complies with the law. In *Tibble v. Edison International*, 575 U.S. 523 (2015), the Court faced the question of whether an ERISA fiduciary had an ongoing obligation to ensure that the investment options set forth in the plan complied with ERISA's strictures. As with actuarial assumptions, selecting the menu of investment options is, at some level, a question of plan design—the sponsor must choose the options, and those options are designated in the plan "at the outset." *Id.* at 529. The fiduciary has a "duty to exercise prudence in selecting [those] investments." *Id.* In addition, the Court recognized that "under trust law" the fiduciary has a "separate" "continuing duty of some kind to monitor investments and remove imprudent ones." *Id.* at 529–30. Accordingly, a "plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id.* at 530.

15

The same reasoning applies here. Trust law has always imposed a requirement that fiduciaries comply with the law in their administration of a trust, even if that means going against the trust's terms. *See, e.g.*, Restatement (Third) of Trusts § 72 (2007) ("A trustee has a duty not to comply with a provision of the trust that the trustee knows or should know is invalid because the provision is unlawful or contrary to public policy."); *id.* cmt. (b) ("Not only is the trustee under no duty to comply with a term of the trust that is invalid (Comment a), but, as stated by the rule of this Section, the trustee ordinarily has a duty to the beneficiaries not to comply."); *id.* ("Furthermore, a trustee has a duty not to comply with a trust provision that directs the trustee to refrain from doing an act, if it is unlawful or against public policy for the trustee not to perform that act."). Thus, under both trust law and ERISA, the Committee has an ongoing duty to monitor the Plan to ensure it continues to comply with ERISA and administer the Plan such that it complies with ERISA. Plaintiffs allege that the Committee failed to do so and have thus adequately stated a claim for fiduciary breach.

## III.    The district court also erred in dismissing Plaintiffs' statutory claims as untimely.

Defendants next argue that Plaintiffs should not be able to bring their statutory claims because Plaintiffs should have known, as a matter of law, that Defendants use the UP-1984 mortality table to calculate their joint and survivor annuities more than two years before filing suit. This argument is flawed on multiple levels. First,

Plaintiffs' claims did not accrue until they learned or should have learned of their *injury*, not when they should have learned of Defendants' use of the UP-1984 mortality table. Second, there are numerous factual questions regarding when Plaintiffs should have learned of their injuries that preclude dismissal. Finally, the Court cannot assess whether Plaintiffs should have learned of their injury from documents outside the Amended Complaint they may never have received.

### A. Plaintiffs' claims accrued when they knew or should have known of their injury.

Defendants' brief conflates the level of knowledge necessary for Plaintiffs' statutory claims to accrue. They contend these claims accrued when Plaintiffs should have known of the actuarial assumptions Defendants used to calculate their joint and survivor annuities. *See* Resp. at 18–20. That is plainly wrong. As Defendants' own case law states, Plaintiffs' statutory claims did not accrue until Plaintiffs knew or should have known that the use of those assumptions was harmful. The case law on this point is consistent and clear: Under the federal discovery accrual rule, a claim accrues when the plaintiff discovered, or should have discovered, "the 'critical facts' of *injury*," which includes "knowledge of *the injury's existence* and knowledge of its cause or of the person or entity that inflicted it." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (citation omitted) (emphasis added); *United States v. Kubrick*, 444 U.S. 111, 122 (1979) ("the critical facts" underlying a claim are that the plaintiff "has been hurt" and the identity of the person "who has inflicted the

injury"); *Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("discovery of the injury . . . is what starts the clock").

Contrary to Defendants' argument (Resp. at 22), *Stone v. Williams* does not counsel otherwise. Rather, it too makes clear that, under federal accrual rules, "[a] cause of action accrues when a plaintiff knows or has reason to know of the *injury* upon which the claim is premised." 970 F.2d 1043, 1048 (2d Cir. 1992) (emphasis added). The facts bear this out. The plaintiff, the "illegitimate" daughter of "the late famous country and western singer Hank Williams," filed claims to William's "copyright renewals for his extensive repertory of songs" in 1985. *Id.* at 1046. Discovery revealed that 12 years earlier, in 1973, the plaintiff had first learned she might be the daughter of Williams, *id.* at 1048, and had received a "small inheritance" from Williams' mother, 873 F.2d 620, 622 (2d Cir. 1989). Then, in 1974, the plaintiff "read a biography on Williams, Sr.," that "mentioned the possibility that Williams, Sr. had fathered an illegitimate daughter, and . . . *speculated on the child's entitlement to a renewal interest in his songs*." *Id.* at 622–23 (emphasis added). The plaintiff admitted that she "surmised that she might be that daughter." *Id.* And yet, the court concluded the plaintiff's claims did not accrue until 1979, when she acknowledged to the state agency responsible for her adoption that Williams might be her father. *Id.*; 970 F.2d at 1048. At that point, the plaintiff should have been aware that she might be entitled to *something* from Williams' estate. Although she may not

18

have been aware of the specific claim she had, she should have known that she had been injured because she "was receiving no money" from Williams' estate. 970 F.2d at 1049.

Here, in contrast, there are no facts to show when exactly Plaintiffs should have known, as a matter of law, of their injuries. Instead, when Plaintiffs "should have known" of their injuries is a question of fact that can only be determined, as it was in *Stone v. Williams*, after discovery. *See supra* Part III.B.

Nevertheless, Defendants insist that Plaintiffs should have just asked "lawyers and experts in the field" whether they had a claim. Resp. at 24. In other words, Defendants think every Plan participant should use their fixed income to hire a lawyer or actuary to scrutinize their pension payments despite having no reason to suspect that anything was amiss, despite Defendants' legal and fiduciary obligations to comply with ERISA, and despite Defendants' direct statements that their joint and survivor annuity would be actuarially equivalent to the single life annuity to which they were otherwise entitled. The law does not, and should not, place such a "harsh" "burden" on ERISA plan participants, when they have no reason to suspect they have suffered a wrong. *Novella v. Westchester Cnty.*, 661 F.3d 128, 146 (2d Cir. 2011) (the law does not require plan participants "to confirm the correctness of his pension award immediately upon the first payment of benefits"); *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 816 (7th Cir. 2010) ("[N]othing suggests that the

19

$286,095 payment that Young received should have been a red flag that she was underpaid."); *see also Valdez ex rel. Donely v. United States*, 518 F.3d 173, 178 (2d Cir. 2008) (quoting *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir. 1985), which rejected "ghoulish" proposition that "any time someone suffered pain or illness or death in a Veterans Administration hospital" they must immediately investigate whether it was caused by a doctor's negligence).

The onus to consult with an expert cannot possibly arise until a plaintiff at least has a reason to suspect they have been injured. Indeed, in the case law Defendants rely upon for this argument (Resp. at 24–25), the plaintiffs *already knew they had been injured and the likely cause of their injury* and then failed to consult with experts as to the potential claims they might have arising from their injuries. *See Kubrick*, 444 U.S. at 118 (plaintiff was aware of his hearing loss and that it was likely cause by antibiotic treatment, but failed to inquire as to whether such "treatment constituted medical malpractice"); *Corcoran v. New York Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999) (claim accrued when decedent knew he had leukemia and knew it "could have been caused by radiation" he was exposed to at work). The same cannot be said here. There is nothing in the record indicating when Plaintiffs knew or even had reason to suspect that they were injured. And, as Defendants own case law recognizes, a potential plaintiff may not gain knowledge of their injury for quite some time if they "ha[ve] little reason to suspect anything"

is awry. *Hertz v. United States*, 560 F.3d 616, 619 (6th Cir. 2009). Moreover, "[t]he determination as to *when* a plaintiff has such knowledge [of injury] is necessarily fact-intensive." *Id.*

Contrary to Defendants' arguments (Resp. at 25–26), *Osberg v. Foot Locker, Inc.* is the most analogous case to this one.[6] In both cases it is the complexity of the pension benefit calculations involved that prevented the plan participants from suspecting that they were harmed in the first place. 862 F.3d 198, 207–08 (2d Cir. 2017). In addition, in both cases the plan administrators provided misleading information that made it even more difficult for the participants to recognize their injury. *Id.* at 203, 209. Here, Defendants falsely stated Plaintiffs' joint and survivor annuities would be actuarially equivalent to the single life annuities to which they were otherwise entitled, when they were not. It makes no difference whether that misrepresentation was intentional or not—it is the false nature of the statement, not the intention behind it, that hindered Plaintiffs' discovery of their injuries. And under the well-established law laid out above, a would-be plaintiff's claims cannot accrue

---

[6] *Testa v. Becker* is not analogous to this case because the plaintiff there did not contend that he did not learn of his *injury* in 1998 when the defendant issued the SPD that stated "the phantom account offset would be used for all employees." 910 F.3d 677, 682 (2d Cir. 2018). Instead, the plaintiff (unsuccessfully) argued that the statute of limitations should be tolled for a variety of reasons.

when the complexity of the injury or the circumstances around it make it near impossible for the plaintiff to know or even suspect that they have been harmed.[7]

Finally, Defendants' argument that Plaintiffs' position places them in a catch-22 of either "confessing error" or waiting indefinitely for Plaintiffs to decide "when to hire an expert" is nonsensical. As an initial matter, *Defendants* drafted the limitations period in the Plan that applies to these claims. If they wanted a different limitations period to apply, they could have drafted a different limitations period, so long as it was reasonable.[8] Defendants now ask the Court to cut the statute of

---

[7] *Thompson v. Ret. Plan for Emps. Of S.C. Johnson & Sons, Inc.,* 716 F. Supp. 2d 752, 772 (E.D. Wis. 2010), *aff'd,* 651 F.3d 600 (7th Cir. 2011) (cited by Defendants at 27), appears at odds with other Seventh Circuit precedent, *see Young,* 615 F.3d at 816 (rejecting the argument that a lump sum payment served as a "red flag" that the participant had been underpaid where the payment was not "so inconsistent" with the participant's understanding of her benefits "as to serve as a clear repudiation"), and *Osberg,* 862 F.3d at 207. But in any event *Thompson* is distinguishable. There, the plan participants received early retirement lump sum payments that were equal to their account balances. Because these two amounts were equal, the participants should have known the lump sum payments did not include properly calculated future interest credits projected forward to age 65 to which they were entitled. 716 F. Supp.2d at 772.

[8] Defendants have already attempted to shorten the limitations period through the SPD. The SPD states claims accrue on "the date on which you receive (or are granted access to) a benefit statement or a statement of deferred vested benefit which includes information on which your claim is based." A558 (cited in Resp. at 16). But statements in the SPD "do not themselves constitute the terms of the plan" and cannot alter plan terms. *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011). This language is inconsistent with the Plan terms (and unreasonable) in that it would start the limitations clock *regardless* of whether the "benefit statement" disclosed enough information for the plaintiff to be actually or constructively aware of their claim as

22

limitations that they drafted short, before a plaintiff knows or should have known that they have even been injured.[9] But the law does not work that way, *see supra* 17–21, and Defendants' inapposite case law does not support such a result. *See Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1221 (10th Cir. 2000) (defendant's general denial of liability did not constitute "concealment" and did not equitably toll the statute of limitations after plaintiffs *already knew* of injury); *United States v. Inc. Vill. of Island Park*, 791 F. Supp. 354, 375 (E.D.N.Y. 1992) (similar); *IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, 2015 WL 1516631, at *5 (S.D.N.Y. Mar. 26, 2015) (rejecting request to apply "subjective" standard to statute of limitations, something plaintiffs do not advocate for here).

### B. There are numerous disputes of fact as to when Plaintiffs knew or should have known of their claims.

When the level of knowledge necessary for Plaintiffs' claims to accrue is framed correctly, it is clear this case is replete with questions of fact that preclude dismissal. As enumerated in the opening brief, these questions include whether Plaintiffs should have understood that Defendants would use the UP-1984 mortality

---

long as the statement contained *some* information on which the claim is later based. *See* Open. Br. at 40 (commencement of limitation period must be reasonable to be enforceable).

[9] Defendants also could have provided substantially more and clearer information to Plan participants. Defendants can't provide convoluted and even misleading information and then complain that plan participants have taken too long to discover the harm they failed to clearly disclose.

table to calculate their benefits, "recognized[d]" the "significance" of this use and "further investigat[ed]." Open. Br. at 47 (quoting *Osberg*, 862 F.3d at 207–08). These questions of fact also include whether Plaintiffs should have known that the UP-1984 mortality table was out-of-date and that the use of an out-of-date mortality table could result in them receiving fewer benefits. *Id.* at 48–49. In light of the undisputed reality that it would likely take an expert-level understanding of actuarial calculations to discover Plaintiffs' injuries, it cannot be reasonably disputed that these questions could give rise to "conflicting inferences." *See* Resp. at 28.

These questions must be informed by everything to which the Plaintiffs were exposed. That includes Defendants' misrepresentation in the *main text* of the Pension Projection Statements that Plaintiffs' joint and survivor annuities would be actuarially equivalent to the single life annuities they were entitled to, when they in fact were not. That also includes any other statements the parties have not discovered or disclosed yet. Consideration of all such relevant information precludes dismissal.

Defendants' contrary argument that there "are no disputed facts" (Resp. at 27) relies on a mischaracterization of the Amended Complaint and a distortion of the relevant factual question. The Amended Complaint does not say that Plaintiffs, at any particular point, "understood" from the Pension Projection Statements that their benefits were calculated "using the Plan's outdated and unreasonable actuarial assumptions." Resp. at 29. Rather, the Amended Complaint identifies what has come

to be understood about Defendants' benefits calculations after investigation. But even if the Court assumes that Plaintiffs received, read, and relied on the Pension Projection Statements, neither the Amended Complaint nor any of the documents Defendants attached to their motion answer the key factual questions of when Plaintiffs knew or should have known *of their injuries*.

It is only appropriate to grant a motion to dismiss on a statute of limitations defense when it is "evident on the face of the . . . complaint" that plaintiffs' claims have expired. *LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 155 (2d Cir. 2003) ("'storm warnings' [were] evident on the face of the detailed complaint"). This is not such a case. Rather, the open questions of fact surrounding when Plaintiffs should have discovered their injuries precludes dismissal. Defendants' case law (Resp. at 27) does not counsel otherwise. *See Moses v. Revlon Inc.*, 691 F. App'x 16, 18 (2d Cir. 2017) (plaintiff admitted in complaint she knew she was entitled to a higher pension payment in 2004, but did not sue until 2015); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 153 (2d Cir. 2012) (plaintiff admitted in complaint he had reason to know wine he purchased was not authentic in 2000, but did not investigate until 2005); *United States v. The Baylor Univ. Med. Ctr.*, 469 F.3d 263, 265–66, 268 (2d Cir. 2006) (government did not challenge that it had received *qui tam* complaint in 1994 containing all material facts, but did not commence action until 2002).

## C.  The district court should not have considered the Pension Projection Statements.

Finally, Defendants continue to insist that it was proper for the district court to consider the Pension Projection Statements in ruling on the motion to dismiss. Defendants' response ignores the "strict[]" rule that if there is any dispute regarding a document, the court should not consider it on a motion to dismiss. Open. Br. at 54. Plaintiffs objected below that there was no evidence in the record that they actually received the Statements, much less received them on the dates appearing on each document, that they are not relevant to the statutory claims, and they are not relevant to the question of when Plaintiffs' claims accrued. In light of these objections, the district court should never have considered the Statements.

Defendants' insist that this rule only applies when plaintiffs "expressly den[y]" receiving a document. Resp. at 33. That argument ignores the strict nature of the rule, improperly places the burden on plaintiffs, and would require plaintiffs to put incomplete evidence into the record on a motion to dismiss where courts should not consider anything outside of the pleadings.

Finally, although the district court did not rely on it, Defendants repeatedly point to the Summary Plan Description ("SPD") in their response and argue it provided Plaintiffs with the relevant material facts regarding their claim. But it was not appropriate for the district court to consider the SPD and it is not appropriate for this Court to do so now. While the Amended Complaint makes reference to the *Plan*

document, it never once mentions or relies on *the SPD*. It is well-established that these are two distinct documents and, again, the statements in the SPD do not "constitute the terms of the plan[.]" *Amara*, 563 U.S. at 438. The SPD is thus not integral to or incorporated into the Amended Complaint.

Moreover, Defendants do not assert or point to any evidence that Plaintiffs ever actually received the SPD. Citing the SPD itself, Defendants assert that "Plaintiffs had access to the SPD . . . via a web portal." Resp. at 20. But Plaintiffs could not have known that *without first receiving the SPD*. *See* A517, A586. Defendants also say the Projection Statements informed Plaintiff that the SPD was available online. Resp. at 20. But again, there is no evidence that Plaintiffs received the Projection Statements or, if they did, read this particular language. In addition, the Court cannot consider either of these documents for the truth of the matters asserted therein, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008), rendering it inappropriate for the Court to conclude the SPD was in fact accessible to Plaintiffs online without further evidence. In short, Defendants have presented no reason to depart from the rule that material outside of the pleadings should not be considered on a motion to dismiss.

## CONCLUSION

This Court should reverse.

Dated:  December 6, 2024

Respectfully submitted,

**STRIS & MAHER LLP**

*/s/ Colleen R. Smith*

Colleen R. Smith

Michelle C. Yau
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com

Colleen R. Smith
STRIS & MAHER LLP
1717 K Street NW Suite 900
Washington, DC 20006
Telephone:  (202) 800-5749
Facsimile:  (213) 261-0299
csmith@stris.com

Jacob Schutz
COHEN MILSTEIN SELLERS &
TOLL PLLC
400 South 4th St., Ste. 401-28
Minneapolis, MN 55415
Telephone: (612) 807-1575
jschutz@cohenmilstein.com

Peter K. Stris
Rachana Pathak
STRIS & MAHER LLP
777 S. Figueroa St., Ste. 3850
Los Angeles, California 90017
Telephone:  (213) 995-6800
Facsimile:  (213) 261-0299
pstris@stris.com
rpathak@stris.com

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(B) because it contains 6,990 words, excluding the parts of the brief exempted by the Federal Rule of Appellate Procedure 32(f).

Undersigned counsel certifies that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced 14-point Times New Roman typeface using Microsoft Word 2019.

Dated:  December 6, 2024                    Respectfully submitted,

                                           **STRIS & MAHER LLP**

                                           */s/ Colleen R. Smith*
                                           Colleen R. Smith

                                           *Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2024, I electronically filed the above document with the Clerk of the Court of the United States Court of Appeals for the Second Circuit by using the appellate ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

Dated:  December 6, 2024

Respectfully submitted,

**STRIS & MAHER LLP**

*/s/ Colleen R. Smith*

Colleen R. Smith

*Attorney for Plaintiffs-Appellants*